IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH JUNG, ROBERT THOMAS, DANIEL SMITH, ALEXANDER SIMPSON, PAUL KELLY, KYLE WILLIAMS, and TIPHANIE LAWTON, Individually and on Behalf of All Others Similarly Situated | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : |

CIVIL ACTION

Plaintiffs,

Case No. _____

***Jury Trial Demanded***

v.

CITY OF PHILADELPHIA, PHILADELPHIA PARKING AUTHORITY, CHERELLE PARKER, LYNETTE M. BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W. TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD LAZER, GABE ROBERTS, CORINNE O'CONNOR, KEOLA HARRINGTON, ANTHONY KUCZYNSKI, and CASEY WECH

Defendants.

## CLASS ACTION COMPLAINT

Plaintiffs, Joseph Jung, Robert Thomas, Daniel Smith, Alexander Simpson, Paul Kelly, Kyle Williams, and Tiphanie Lawton, individually and on behalf of all others similarly situated, by their undersigned counsel, bring this action against Defendants, City of Philadelphia, the Philadelphia Parking Authority (collectively, the "Entity Defendants"), Cherelle Parker, Lynette M. Brown-Sow, Patricia M. Furlong, Beth C. Grossman, Alfred W. Taubenberger, Obra S. Kernodle, IV, Mark C. Nicastre, Richard Lazer, Gabe Roberts, Corinne O'Connor, Keola Harrington, Anthony Kuczynski, Casey Wech (collectively, the "Individual Defendants," and together with the Entity Defendants, "All Defendants"), and in support thereof aver as follows:

## PARTIES

1.      Plaintiff Joseph Jung is an adult individual residing at 3708 Gladwyn Avenue, Pennsauken, NJ 08109.

2.      Plaintiff Robert Thomas is an adult individual residing at 1435 South Bancroft Street, Philadelphia, PA 19146.

3.      Plaintiff Daniel Smith is an adult individual residing at 10205 Calera Road, Philadelphia, PA 19114.

4.      Plaintiff Alexander Simpson is an adult individual residing at 2 Tartan Court, Horsham, PA 19044.

5.      Plaintiff Paul Kelly is an adult individual residing at 9324 Walker Street, Philadelphia, PA 19114.

6.      Plaintiff Kyle Williams is an adult individual residing at 2904 South 61st Street, Philadelphia, PA 19142.

7.      Plaintiff Tiphanie Lawton is an adult individual residing at 2172 Knorr Street, Philadelphia, PA 19149.

8.      Defendant City of Philadelphia is a municipal corporation and political subdivision of the Commonwealth of Pennsylvania.

9.      Defendant City of Philadelphia created Defendant Philadelphia Parking Authority ("PPA") pursuant to the Commonwealth of Pennsylvania Parking Authority Law (Act of June 5, 1947, 53 P.S. § 341 *et. seq.*). The PPA constitutes a public body, exercising public powers of the Commonwealth as an agency of the Commonwealth. 53 Pa.C.S.A. § 5505(a)(1). The PPA is governed by a board of six (6) Members appointed by the Governor of the Commonwealth. 53 Pa.C.S.A. § 5508.1(c), (e).

10.    Defendant Cherelle Parker ("Parker") is the mayor of the City of Philadelphia. She is being sued in her individual and official capacity.

11.    Defendant Lynette M. Brown-Sow ("Brown-Sow") is the Chairperson of PPA. She is being sued in her individual and official capacity.

12.    Defendant Patricia M. Furlong ("Furlong") is a Board Member of PPA. She is being sued in her individual and official capacity.

13.    Defendant Beth. C. Grossman ("Grossman") is a Board Member of PPA. She is being sued in her individual and official capacity.

14.    Defendant Alfred W. Taubenberger ("Taubenberger") is a Board Member of PPA. He is being sued in his individual and official capacity.

15.    Defendant Obra S. Kernodle, IV ("Kernodle") is a Board Member of PPA. He is being sued in his individual and official capacity.

16.    Defendant Mark C. Nicastre ("Nicastre") is a Board Member of PPA. He is being sued in his individual and official capacity.

17.    Defendant Richard Lazer ("Lazer") is the Executive Director of PPA. He is being sued in his individual and official capacity.

18.    Defendant Gabe Roberts ("Roberts") is a Deputy Executive Director of PPA. He is being sued in his individual and official capacity.

19.    Defendant Corinne O'Connor ("O'Connor") is a Deputy Executive Director of PPA. She is being sued in her individual and official capacity.

20.    Defendant Keola Harrington ("Harrington") is a Deputy Executive Director of PPA. She is being sued in her individual and official capacity.

21.    Defendant Anthony Kuczynski ("Kuczynski") is the Director of Enforcement for PPA. He is being sued in his individual and official capacity.

22.    Defendant Casey Wech ("Wech") is the Director of Automated Enforcement for PPA. She is being sued in her individual and official capacity.

## JURISDICTION AND VENUE

23.    This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

24.    Venue is proper pursuant to 28 U.S.C. §1391 because all of the events giving rise to these claims occurred within the District.

## STATEMENT OF FACTS

25.    Defendant City of Philadelphia, like other municipalities in Pennsylvania, is given the power under state law to enforce the Pennsylvania Vehicle Code, 75 Pa.C.S.A. § 101, et seq., on streets and highways within its boundaries.

26.    This power includes enforcing speed limits and traffic signals on those streets and highways.

27.    In 2002, the Pennsylvania Legislature created the Automated Red Light Camera Program (the "Red Light Camera Program") to improve highway safety in Philadelphia and named the PPA the program's administrator.

28.    With the oversight of the City Council and the Pennsylvania Secretary of Transportation, the PPA recommends dangerous, high-traffic volume intersections to install the necessary equipment and operate the enforcement program.

29.    According to the PPA, The Red Light Camera Program has dramatically reduced red light violations wherever it has been installed, thereby preventing many "T-Bone" accidents.

That success led the Legislature to expand Automated Red Light Enforcement systems throughout the Commonwealth in 2012.

30.    In 2018, the Pennsylvania Legislature created the Automated Speed Camera Program (the "Speed Camera Program") in Philadelphia to address dangerous driving conditions on Roosevelt Boulevard and named the PPA its administrator.

31.    According to the PPA, the City of Philadelphia and PPA have significantly reduced speeding on Roosevelt Boulevard through this program.

32.    In April 2023, the PPA issued the Roosevelt Boulevard Automated Speed Camera Annual Report (the "Speed Camera Annual Report"). The Speed Camera Annual Report was prepared by Defendant Casey Wech, the PPA Director of Automated Enforcement. A true and correct copy of the Speed Camera Annual Report is attached hereto as **Exhibit A**.

33.    The Speed Camera Annual Report included information and data regarding, among others, the number of violations issued over three years and revenue generated by the Speed Camera Program.

34.    Between June 2020 and May 2021, the Entity Defendants issued 761,188 violations through the Speed Camera Program.

35.    Between June 2021 and May 2022, the Entity Defendants issued 225,387 violations through the Speed Camera Program.

36.    Between June 2022 and February 2023, the Entity Defendants issued 285,220 violations through the Speed Camera Program.

37.    The Speed Camera Program generated revenue of $17,812,191 from violations in fiscal year 2023.

38.     Less costs and expenses, the Speed Camera Program yielded a net income of $14,102,944 for fiscal year 2023.

39.     Defendant City of Philadelphia is continuing to grow its Speed Camera Program. On Monday, January 27, 2025, Individual Defendant Parker, Philadelphia's Mayor, signed a bill approving the installation of additional automated speed cameras on Frankford, Baltimore, and West Hunting Park avenues. *See* https://www.nbcphiladelphia.com/news/local/mayor-parker-set-to-sign-bill-to-bring-speed-cameras-to-rt-13/4089674/.

40.     Like the Speed Camera Annual Report, the PPA also released the Red Light Camera Program Annual Report (the "Red Light Annual Report") in September 2024. A true and correct copy of the Red Light Annual Report is attached hereto as **Exhibit B**.

41.     The Red Light Annual Report included information and data regarding, among others, the number of violations issued under the Red Light Camera Program and revenue generated therefrom.

42.     In fiscal year 2022, the Entity Defendants issued 267,686 violations through the Red Light Camera Program.

43.     In fiscal year 2023, the Entity Defendants issued 268,875 violations through the Red Light Camera Program.

44.     In fiscal year 2024, the Entity Defendants issued 374,262 violations through the Red Light Camera Program.

45.     The Red Light Camera Program generated a total revenue of $32,042,512 from violations , in fiscal year 2024.

46.     Less costs and expenses, the Red Light Camera Program yielded a net income of $23,038,615 for fiscal year 2024.

47.     Pennsylvania law provides that the Speed Camera Program and Red Light Camera Program adhere to certain requirements as set forth in 75 Pa.C.S.A. § 101, *et seq.* (the "Vehicle Code").

48.     The statutory requirements imposed by the Vehicle Code are supposed to ensure that recipients of violations are afforded adequate due process protections. *See In re Heinz*, 316 A.3d 1062, 1074 (Pa. Cmwlth. 2024), *reargument denied* (July 11, 2024) ("Section 3370 includes numerous procedural due process protections").

49.     The Vehicle Code provides that the notice of a Speed Camera Program violation notice ("Speeding Notice") shall have attached to it:

(i) a copy of the recorded image showing the motor vehicle;

(ii) ***the registration number and state of issuance of the motor vehicle registration***;

(iii) the date, time and place of the alleged violation;

(iv) notice that the violation charged is under section 3362; and

(v) instructions for return of the notice of violation[.]

75 Pa.C.S.A. § 3370(i)(3)(i)-(v) (emphasis added).

50.     A Speeding Notice must also include a certificate "based upon inspection of recorded images produced by an automated speed enforcement system and sworn to or affirmed by a police officer employed by the city" as evidence of the violation. 75 Pa.C.S.A. § 3370(c).

51.     The certificate "must include written documentation that the automated speed enforcement system was operating correctly at the time of the alleged violation." *Id.*

52.     For each violation of the Speed Camera Program, the owner of the motor vehicle is liable for the penalty "unless the owner . . . has a defense under subsection (g)" of the statute. 75 Pa.C.S.A. § 3370(g)(b).

53.     Subsection (g) provides that:

> It shall be a defense to a violation under this section that the person named in the notice of the violation was not driving the motor vehicle at the time of the violation. The owner of the motor vehicle may be required to submit evidence that the owner was not the driver at the time of the alleged violation. The city of the first class may not require the owner of the motor vehicle to disclose the identity of the driver of the motor vehicle at the time of the violation.

75 Pa.C.S.A. § 3370(g)(1).

54.     Similarly, the Vehicle Code provides that the notice of a Red Light Camera Program violation notice ("Red Light Notice," and collectively with the Speeding Notice, the "Notices") shall have attached to it: "a copy of the recorded image showing the vehicle; ***the registration number and state of issuance of the vehicle registration***; the date, time and place of the alleged violation; that the violation charged is under section 3112(a)(3); and instructions for return of the notice of violation." 75 Pa.C.S.A. § 3116(h)(3) (emphasis added).

55.     A Red Light Notice must also include a certificate "based upon inspection of recorded images produced by an automated red light enforcement system and sworn to or affirmed by a police officer employed by the city" as evidence of the violation. 75 Pa.C.S.A. § 3116(c).

56.     The certificate "must include written documentation that the automated red light enforcement system was operating correctly at the time of the alleged violation." *Id.*

57.     For each violation of the Red Light Camera Program, the owner of the motor vehicle is liable for the penalty "unless the owner . . . has a defense under subsection (f)" of the statute. 75 Pa.C.S.A. § 3116(b).

58.     Subsection (f) provides that:

> It shall be a defense to a violation under this section that the person named in the notice of the violation was not operating the vehicle at the time of the violation. The owner may be required to submit evidence that the owner was not the driver at the time of the alleged

> violation. The city of the first class may not require the owner of the vehicle to disclose the identity of the operator of the vehicle at the time of the violation.

75 Pa.C.S.A. § 3116(f)(1).

59.     Both Notices have significant deficiencies.

60.     The Speeding Notice does not have attached to it the vehicle registration number, a direct violation of 75 Pa.C.S.A. § 3370(i)(3)(ii).

61.     Similarly, the Red Light Notice does not have attached to it the vehicle registration number, a direct violation of 75 Pa.C.S.A. § 3116(h)(3).

62.     The vehicle registration number is critical in identifying, among others, the name and address of the registrant and the name of the owner, if other than the registrant. *See* 75 Pa.C.S.A. § 1308(a).

63.     The Entity Defendants failed to include this critical information on the Speed Notices and Red Light Notices.

64.     The Notices also feature a sworn attestation by an officer for the City of Philadelphia Police Department.

65.     The Speeding Notice attestation states:

> I am a fully commissioned officer for the City of Philadelphia Police Department and am authorized to enforce the laws of the State of Pennsylvania. I have inspected the recorded images affixed to this Notice of Violation, and believe all the information to be true and correct, and that the vehicle was operated to a speed in excess of the posted speed limit. I hereby affirm and certify that these images evidence a violation of sections 3362 and 3370 of Title 75 of the Pennsylvania Consolidated Statutes and The Philadelphia Code Chapter 12-3400. As the registered owner of the vehicle, ***you are liable*** to pay a fine of $100.00 pursuant to PA. C.S. § 3362(c).

> (emphasis added)

66.     The Red Light Notice attestation states:

I have inspected the recorded images affixed to this Notice of Violation, and believe all the information to be true and correct, and that the red light camera system was operating correctly at the time the driver entered the intersection after the light turned red. I hereby affirm and certify that these images evidence a violation of section 3112(a)(3) of Title 75 of the Pennsylvania Consolidated Statutes and The Philadelphia Code Chapter 12-3000. As the registered owner of the vehicle, *you are liable* to pay a fine of $100.00 pursuant to PA. C.S. § 3116(d).

(emphasis added)

67.    Noticeably absent from the Speeding Notice is any "written documentation that the automated speed enforcement system was operating correctly at the alleged time of the violation," a direct violation of Pa.C.S.A. § 3370(c).

68.    Most egregiously, both the Speeding Notice and the Red Light Notice contain the misleading language, "[a]s the registered owner of the vehicle, you are liable to pay a fine . . . ."

69.    The above statement, however, is false.

70.    Pursuant to the Vehicle Code, vehicle owners have an affirmative defense to the violation if they were not driving the motor vehicle at the time of the violation. 75 Pa.C.S.A. § 3370(g)(1); 75 Pa.C.S.A. § 3116(f)(1).

71.    In other words, the Entity Defendants are quoting only a portion of the relevant statutory language while omitting the rest of the sentence relating to available defenses.

72.    The Entity Defendants' use of misleading language tells the owner he is liable by virtue of being the owner.

73.    The Entity Defendants used blatantly misleading language in the Notices to induce vehicle owners, including Plaintiffs, to pay fines they were not required by law to pay.

74.     This misleading language is particularly harmful, because limitations with the cameras used in the Red Light Camera Program and the Speeding Camera Program mean that the Entity Defendants are otherwise incapable of establishing the identity of the driver.

75.     The cameras used only capture images of the vehicle from a rear view. They do not capture any images of the driver or provide any other evidence of the driver's identity.

76.     Through this misleading language, the Entity Defendants deprived Plaintiffs of their property interest in the money that Plaintiffs paid towards fines.

77.     The Entity Defendants similarly created and issued statutorily deficient Notices, depriving Plaintiffs of proper procedural safeguards required by the Vehicle Code.

78.     For example, on April 27, 2023, Plaintiff Paul Kelly received a Speeding Notice issued by the Entity Defendants.

79.     The Notice, violation number 5072300899105, cited Mr. Kelly for driving 58 miles per hour in a 45-mile-per-hour zone when traveling northbound on Roosevelt Boulevard.

80.     Mr. Kelly pled not guilty of the violation and attended a hearing to contest the citation.

81.     Despite providing screenshots from his State Farm insurance phone application, which tracked the precise driving habits and speed of Mr. Kelly's vehicle at the time of the alleged violation, Mr. Kelly was found liable and had to pay the fine.

82.     Similarly, in or around March 2023, Plaintiff Joseph Jung received a Speeding Notice issued by the Entity Defendants.

83.     Mr. Jung paid a fine in the amount of $104.00 on March 21, 2023.

84.     Plaintiff Alexander Simpson has received several Speeding Notices and Red Light Notices from the Entity Defendants.

85.     Mr. Simpson has paid the fine each time he received a violation.

86.     Plaintiff Daniel Smith has similarly received multiple Speeding Notices issued by the Entity Defendants, paying each violation as instructed by the Notice. A true and correct copy of one of the Speeding Notices issued to Daniel Smith is attached hereto as **Exhibit C**.

87.     Similarly, Plaintiff Tiphanie Lawton received a Red Light Notice, despite not driving her vehicle at the time of the violation.

88.     Ms. Lawton believed that she was required to pay the fine because the Red Light Notice stated that she was liable.

89.     Accordingly, Ms. Lawton paid the fine.

90.     Had Ms. Lawton known that she had an available affirmative defense, she would not have paid the fine.

91.     Likewise, Plaintiff Kyle Williams received multiple Red Light Notices from the Entity Defendants, despite not driving his vehicle at the time of the violations.

92.     Mr. Williams believed that he was required to pay the fine because the Red Light Notices stated that he was liable.

93.     Mr. Williams paid the fines.

94.     Had Mr. Williams known that he had an available affirmative defense, he would not have paid the fines.

95.     Upon information and belief, the Individual Defendants exercise dominion and control over the Entity Defendants.

96.     Defendant Parker serves as Mayor to the City of Philadelphia.

97.     Defendant Brown-Sow serves as Chairperson to the PPA Board of Directors (the "Board").

98.    Defendants Furling, Grossman, Taubenberger, Kernodle, and Nicastre all serve as Board Members.

99.    Defendant Lazer serves as PPA Executive Director.

100.    Defendants Robers, O'Connor, and Harrington serve as PPA Deputy Executive Directors.

101.    Defendant Kuczynski serves as PPA Director of Enforcement.

102.    Defendant Wech serves as PPA Director of Automated Enforcement.

103.    Thus, upon information and belief, the Individual Defendants worked together to implement and enforce the Speed Camera Program and the Red Light Camera Program.

104.    Similarly, upon information and belief, the Individual Defendants worked together to draft, create, finalize, and implement the Speeding Notices and the Red Light Notices.

105.    To be sure, the PPA is the designated administrator of both the Speed Camera Program and the Red Light Camera Program.

106.    Thus, the Individual Defendants, through the Entity Defendants, issued and/or caused to be issued the Notices to Plaintiffs, and those similarly situated.

107.    Pursuant to Section 12-3409 of Title 12 of the Philadelphia Code (the "Traffic Code"), Notice recipients can request a hearing with the City of Philadelphia Office of Administrative Review ("OAR") to dispute their alleged violations. *See* Traffic Code § 12-3409(1)-(2) (Section 12-3409(1)-(2) of the Traffic Code requires a hearing be scheduled upon request of a Violation Notice recipient).

108.    If a recipient elects to dispute their violation at the hearing, OAR places the burden on the recipient to show that they have a defense to their violation.

109.    Upon information and belief, OAR routinely and systematically finds recipients liable even where they offer proof that they did not commit the alleged violation.

110.    For example, Plaintiff Paul Kelly, discussed above, submitted to OAR evidence from his State Farm insurance application showing that his vehicle speed at the time of the alleged violation was not over the speed limit at the location where the alleged violation occurred.

111.    This internal data is the best evidence that could be available to refute a claim of speeding under the Speeding Camera Program.

112.    Upon information and belief, representatives of the Entity Defendants present at a hearing have no direct knowledge of an individual's alleged violation.

113.    Instead, they rely solely upon the information contained in the Notice.

114.    Despite Mr. Kelly's showing, OAR found him liable and required that he pay the fine.

115.    As discussed above, OAR places the burden on the violation recipients to show that they have an affirmative defense to both Speeding Notices and Red Light Notices.

116.    This includes violation recipients who raise the defense that they were not driving the motor vehicle at the time of the alleged violation. *See* 75 Pa.C.S.A. § 3370(g)(1); 75 Pa.C.S.A. § 3116(f)(1).

117.    Pursuant to the Vehicle Code, "[t]he owner of the motor vehicle may be required to submit evidence that the owner was not the driver at the time of the alleged violation." 75 Pa.C.S.A. § 3370(g)(1); *see also* 75 Pa.C.S.A. § 3116(f)(1) (same).

118.    Otherwise, "the owner of the motor vehicle ***shall be liable*** for the penalty imposed[.]" 75 Pa.C.S.A. § 3370(b) (emphasis added); *see also* 75 Pa.C.S.A. § 3116(b) (same).

119.    In other words, the Vehicle Code instructs OAR that it must find the owner of the vehicle liable unless the owner persuades OAR not to make such a finding.

120.    Liability flows from Sections 3362 (for Speed Camera Program violations) and 3312 (for Red Light Camera Program violations) of Title 75 of the Pennsylvania Consolidated Statutes. The Notices explicitly state as such.

121.    The Speeding Notice states that the attached images of the vehicle "evidence a violation of sections 3362 and 3370 . . . ."

122.    The Red Light Notice states that the attached images of the vehicle "evidence a violation of section 3112(a)(3) . . . ."

123.    Section 3362 provides that "no *person* shall *drive a vehicle* at a speed in excess of" certain prescribed limits based on the nature of the road. 75 Pa.C.S.A. § 3362(a) (emphasis added).

124.    Section 3112 provides that traffic-control signals "shall indicate and apply to *drivers of vehicles*" and pedestrians. 75 Pa.C.S.A. § 3112(a).

125.    Sections 3362 and 3112 are silent regarding vehicle ownership; liability is prescribed exclusively to those who *drive* the vehicle in violation of either Section.

126.    In other words, Sections 3362 and 3112 only impose penalties on *drivers*, not the owners of vehicles.

127.    The Vehicle Code, therefore, imposes a mandatory rebuttable presumption that shifts the burden of persuasion on the crucial question of who was driving the motor vehicle to the vehicle owner.

## CLASS ALLEGATIONS

128.    Plaintiffs seek certification of the following classes pursuant to the Federal Rules of Civil Procedure:

a. All individuals who received and paid fines for Speeding Notices or Red Light Notices as part of the Automated Speed Camera Program or Automated Red Light Camera Program in the city of Philadelphia, from February 21, 2023 to present ("Class A").

b. All individuals who received and paid fines for Speeding Notices or Red Light Notices as part of the Automated Speed Camera Program or Automated Red Light Camera Program in the city of Philadephia, but were not driving at the time of the violation, from February 21, 2023 to present ("Class B").

129. Fed. R. Civ. P. 23(a) provides that an action may be maintained as a class action if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

### *Numerosity*

130. Pursuant to Fed. R. Civ. P. 23(a)(1), Class members are so numerous that their individual joinder is impracticable.

131. As set forth above, the Entity Defendants improperly issued hundreds of thousands of violations every year under the Red Light Camera Program and Speed Camera Program.

132. The precise number of Class A members and Class B members is unknown to Plaintiffs, but the number of people in the proposed Classes greatly exceeds the number considered in this judicial district to make joinder impossible.

### *Common Questions of Law or Fact*

133.    Pursuant to Fed. R. Civ. P. 23(a)(2), questions of law and fact, except as to the amount of damages each member of the Classes sustained, are common to the Classes.

134.    Common questions of law and fact predominate over the questions affecting only individual Class members.

135.    Some of the common legal and factual questions, without limitation, include

a.      Whether the statutes enabling the Red Light Camera Program and the Speeding Camera Program are constitutionally deficient because they improperly relieve the Entity Defendants of their burden to establish a violation by the actual recipient of the violation;

b.      Whether the deficiencies in the Speed Notices and Red Light Notices deprived violation recipients of procedural safeguards required by the Pennsylvania Vehicle Code;

c.      Whether the language "[a]s the registered owner, you are liable to pay a fine" misled vehicle owners with an affirmative defense under 75 Pa.C.S.A. § 3370(g)(1) or 75 Pa.C.S.A. § 3116(f)(1) to believe they were responsible to pay a fine for the violation.

### *Typicality*

136.    Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the claims of the other members of the Classes.

137.    Plaintiffs and Class members have all been damaged as a result of Defendants' actions in issuing deficient and misleading Speed Notices and Red Light Notices. In other words, Plaintiffs and Class members were subject to, and harmed by, a common practice applied by Defendants.

### *Adequacy of Representation*

138.    Pursuant to Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the Class.

139.    Plaintiffs are familiar with the basic facts that form the basis of the Class members' claims.

140.    Plaintiffs' interests do not conflict with the interests of the other Class members they seek to represent.

141.    Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously.

### *Predominance and Superiority*

142.    Pursuant to Fed. R. Civ. P. 23(b)(3), common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy because joinder of all Class members is impracticable.

143.    The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.

144.    A class action would achieve substantial economies of time, effort, and expense; and would ensure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

### *Declaratory and Injunctive Relief*

145.    Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted on grounds applying generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

146.    Final injunctive relief requiring Defendants to discontinue issuing deficient and misleading Speed Notices and Red Light Notices is an appropriate remedy to the Class as a whole.

*Issue Certification*

147.    As an alternative to Rule 23(b)(2) and/or 23(b)(3), Plaintiffs seek issue certification under Rule 23(c)(4) of liability issues common to all Class members.

## CAUSES OF ACTION

### COUNT I
**42 U.S.C. § 1983**
**Plaintiffs v. All Defendants**
**Violation of Due Process – Mandatory Rebuttable Presumption**

148.    Plaintiffs incorporate the preceding paragraphs as though set forth in their entirety.

149.    The substantive component of the Fifth and Fourteenth Amendments' Due Process clauses include not only the privileges and rights expressly enumerated by the Bill of Rights, but also include the fundamental rights implicit in the concept of ordered liberty.

150.    The Fifth and Fourteenth Amendments bar certain government actions regardless of the fairness of the procedures used to implement them, particularly conduct that is so arbitrary as to constitute an abuse of governmental authority.

151.    Creating a mandatory rebuttable presumption against an accused constitutes such abuse.

152.    A mandatory rebuttable presumption relieves the State of the affirmative burden of persuasion on the presumed element of a charge by instructing the factfinder that it must find the presumed element unless the accused persuades the factfinder not to make such a finding.

153.    Mandatory rebuttable presumptions are unconstitutional because they violate an accused's right to due process of law. *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).

154.    75 Pa.C.S.A 3370 and 75 Pa.C.S.A. 3316 create such a mandatory rebuttable presumption against vehicle owners.

155.    Under Pennsylvania's Vehicle Code, unless a vehicle owner can prove they were not the driver, they **shall** be held liable for violations of 75 Pa.C.S.A 3370 and 75 Pa.C.S.A. 3316.

156.    The passage and enforcement of these provisions impermissibly create a mandatory presumption of liability against vehicle owners, even where the Defendants present no evidence that the owner was driving the vehicle or committed any offense.

157.    This error is then compounded by the misleading notices, which improperly suggest that no defenses are available to the violation.

158.    Given the size of the fines at issue, the system is designed to prevent drivers from challenging their violations by making it appear futile to do so.

159.    Implementing this unconstitutional scheme improperly generates millions of dollars for the Entity Defendants.

160.    This conduct shocks the conscience, as the Entity Defendants generate massive revenue for unsubstantiated and unconstitutional penalties.

161.    75 Pa.C.S.A 3370 and 75 Pa.C.S.A. 3316 violate the Fifth and Fourteenth Amendments and are therefore facially invalid.

<u>**COUNT II**</u>
**42 U.S.C. § 1983**
**Plaintiffs v. All Defendants**
**Violation of Due Process – Misleading Violations**

162.    Plaintiffs incorporate the preceding paragraphs as though set forth in their entirety.

163.    The Fifth and Fourteenth Amendments to the United States Constitution prohibit the government from depriving citizens of life, liberty, or property without due process of law.

164.    Due Process requires that when the government acts in a manner that deprives a citizen of life, liberty, or a property interest, the individual must be given proper notice, the opportunity to be heard, and a decision by a neutral decision maker.

165.    Failure to provide proper procedural safeguards raises a due process issue.

166.    All Defendants have engaged in and will continue to engage in a practice of issuing and/or causing to be issued misleading Speeding Notices and Red Light Notices to Plaintiffs and those similarly situated.

167.    By inducing violation recipients to pay fines for which they were not liable through misleading and deceitful language, All Defendants have continuously and deliberately deprived Plaintiffs, and those similarly situated, of a legitimate property interest protected by the Fifth and Fourteenth Amendments.

168.    All Defendants issued and/or caused to be issued Class B violations containing misleading language, thereby making Class B members believe they were liable for a fine which, under Pennsylvania law, they have an affirmative defense and do not have to pay.

169.    In other words, All Defendants misstated the law as it applied to Class A in order to compel Class A Members to pay fines for which they were not liable.

170.    There is no legitimate governmental interest in the ongoing deprivation of monies rightfully belonging to those who have an affirmative defense to the violation of which they are accused.

171.    That All Defendants have deceitfully induced and will continue to induce all Class A Members to pay fines based on misleading language, when Defendants can correct this injustice, is an ongoing violation of the Fifth and Fourteenth Amendments' guarantee of due process.

**COUNT III**
**42 U.S.C. § 1983**
**Plaintiffs v. All Defendants**
**Violation of Due Process – Deficient Violations**

172.    Plaintiffs incorporate the preceding paragraphs as though set forth in their entirety.

173.     All Defendants have engaged in and will continue to engage in a practice of issuing and/or causing to be issued deficient Speed Camera Notices and Red Light Camera Notices in violation of statutory requirements that provide proper procedural safeguards.

174.     By failing to adhere to the statutory requirements of 75 Pa.C.S.A. § 3370 and 75 Pa.C.S.A. § 3116, the Notices do not provide the proper procedural safeguards as required by the Fifth and Fourteenth Amendments.

175.     The Speeding Notices and the Redlight Notices are deficient in several ways, including:

   a.    The Speeding Notices and Red Light Notices do not attach the vehicle registration number, a direct violation of 75 Pa.C.S.A. § 3370(i)(3)(ii) and 75 Pa.C.S.A. § 3116(h)(3).

   b.    The Speeding Notice do not attach "written documentation that the automated speed enforcement system was operating correctly at the alleged time of the violation," a direct violation of Pa.C.S.A. § 3370(c).

   c.    And the Speeding Notice and the Red Light Notice contain an affirmative misstatement of the law that, "[a]s the registered owner of the vehicle, you are liable to pay a fine . . . ." without disclosing the defense available to the vehicle owner.

176.     As the Speeding Notices and the Redlight Notices violate the statutes which authorize them, they are void.

177.     The extraction of these fines on the basis of defective, void, and misleading notices shocks the conscience.

178.     It further deprives Plaintiffs and those similarly situated of the procedural safeguards and information required in the statute.

179.    As a result, Plaintiffs, and those similarly situated, have been subjected to a deprivation of their property interest through paying fines associated with the violations for which they received deficient Notices.

180.    Plaintiffs, and those similarly situated, have been damaged as a result of Defendants' unlawful practices.

181.    Accordingly, the Speed Camera Notices and Red Light Notices violate the due process clauses of the Fifth and Fourteenth Amendments.

**COUNT IV**
**Pennsylvania Constitution, Article I, Section 1**
**Plaintiffs v. All Defendants**
**Violation of Due Process – Deficient and Misleading Violations**

182.    Plaintiffs incorporate the preceding paragraphs as though set forth in their entirety.

183.    Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa.Const. art. I, § 1.

184.    A due process claim brought under the Pennsylvania Constitution is indistinguishable from a due process claim brought under the Fourteenth Amendment of the United States Constitution; the same analysis applies to both.

**COUNT V**
**42 U.S.C. § 1983**
**Plaintiffs v. Individual Defendants**
**Civil Conspiracy**

185.    Plaintiffs incorporate the preceding paragraphs as set forth in their entirety.

186.    One or more of the Defendants participated in a conspiracy to draft deficient and misleading Notices directed to Plaintiffs and those similarly situated.

187.    One of more of the Individual Defendants also participated in a conspiracy to have Defendants draft deficient and misleading Notices directed to Plaintiffs and those similarly situated.

188.    The conspiracy, as it applied to Plaintiffs and those similarly situated, was an expressed or implied agreement between the Individual Defendants, through the Entity Defendants, to deprive Plaintiffs of their constitutional rights by drafting and causing to be issued Notices that contain misleading language and fail to comply with statutory requirements.

189.    The acts complained of were carried out by the Individual Defendants under the color of state law in their capacities as policymakers, city and state officials, and/or PPA officials, pursuant to the customs, usages, practices, procedures, and laws of the City of Philadelphia and the PPA.

190.    As a direct and proximate result of the Individual Defendants' participation in the conspiracy, Plaintiffs, and those similarly situated, have suffered immediate and irreparable harm, including but not limited to the financial losses as set forth in greater detail above.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court issue the following relief:

1.    Certify this action as a class action, appoint Plaintiffs as class representatives, and appoint the undersigned as Class Counsel;

2.    Declare that Defendants' conduct, as alleged herein, violates the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution;

3.      Enjoin Defendants from continuing to engage in the unlawful conduct alleged herein;

4.      Award Plaintiffs and other Class members damages in an amount to be determined at trial;

5.      Order Defendants to disgorge and/or restore all funds, revenues, and benefits obtained from Plaintiffs and other Class members as a result of their unlawful conduct;

6.      Award Plaintiffs and other Class members reasonable attorneys' fees, costs, and expenses, as allowed by law or equity; and

7.      Grant Plaintiffs and other Class members all other relief that the Court deems equitable and just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury for all claims so triable.

**KANG HAGGERTY LLC**

*/s/ Kyle Garabedian*
Edward T. Kang
Kyle Garabedian
Kang Haggerty LLC
123 South Broad Street, Suite 1950
Philadelphia, Pennsylvania 19109
(215) 525-5850 (tel)
(215) 525-5860 (fax)
ekang@kanghaggerty.com
kgarabedian@kanghaggerty.com
*Counsel for Plaintiffs*

Dated: February 21, 2025