## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH JUNG, ROBERT THOMAS, DANIEL SMITH, ALEXANDER SIMPSON, PAUL KELLY, KYLE WILLIAMS, and TIPHANIE LAWTON, Individually and on Behalf of All Others Similarly Situated**<br>　　　　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**CITY OF PHILADELPHIA, PHILADELPHIA PARKING AUTHORITY, CHERELLE PARKER, LYNETTE M. BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W. TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD LAZER, GABE ROBERTS, CORINNE O'CONNOR, KEOLA HARRINGTON, ANTHONY KUCZYNSKI, and CASEY WECH**<br>　　　　　　　　**Defendants.** | **Civil Action No. 2:25-00956-MAK** |

## ORDER

  **AND NOW**, this _____ day of _____, 20___, upon consideration of Defendants

City of Philadelphia and Cherelle Parker's Motion to Dismiss, and any response thereto, it is

ORDERED that Plaintiffs' Complaint is dismissed against these Defendants.

             BY THE COURT:

             _____

                    **J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH JUNG, ROBERT THOMAS, DANIEL SMITH, ALEXANDER SIMPSON, PAUL KELLY, KYLE WILLIAMS, and TIPHANIE LAWTON, Individually and on Behalf of All Others Similarly Situated<br>               **Plaintiffs,**<br><br>      v.<br><br>CITY OF PHILADELPHIA, PHILADELPHIA PARKING AUTHORITY, CHERELLE PARKER, LYNETTE M. BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W. TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD LAZER, GABE ROBERTS, CORINNE O'CONNOR, KEOLA HARRINGTON, ANTHONY KUCZYNSKI, and CASEY WECH<br>               **Defendants.** | **Civil Action No. 2:25-00956-MAK** |

**CITY DEFENDANTS' MOTION TO DISMISS**

Defendants City of Philadelphia and Cherelle Parker ("City Defendants"), by their undersigned attorneys, move for an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants respectfully submit that such relief is warranted for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
William B. Shuey, Senior Attorney

Dated: April 17, 2025

/s/ William B. Shuey___
William B. Shuey, Senior Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH JUNG, ROBERT THOMAS, DANIEL SMITH, ALEXANDER SIMPSON, PAUL KELLY, KYLE WILLIAMS, and TIPHANIE LAWTON, Individually and on Behalf of All Others Similarly Situated**<br><br>    **Plaintiffs,**<br><br>  **v.**<br><br>**CITY OF PHILADELPHIA, PHILADELPHIA PARKING AUTHORITY, CHERELLE PARKER, LYNETTE M. BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W. TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD LAZER, GABE ROBERTS, CORINNE O'CONNOR, KEOLA HARRINGTON, ANTHONY KUCZYNSKI, and CASEY WECH**<br>    **Defendants.** | **Civil Action No. 2:25-00956-MAK** |

**MEMORANDUM OF LAW IN SUPPORT OF
CITY DEFENDANTS'MOTION TO DISMISS**

# TABLE OF CONTENTS

ORDER ............................................................................................................................ 1

CITY DEFENDANTS' MOTION TO DISMISS........................................................... 2

MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS'MOTION TO DISMISS i

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION .............................................................................................. 1

II.     BACKGROUND ................................................................................................ 1

        A.      Relevant Factual Allegations ................................................................ 1

        B.      Procedural History ................................................................................. 5

III.    LEGAL STANDARD......................................................................................... 5

IV.     ARGUMENT ...................................................................................................... 6

        A.      Mandatory Rebuttable Presumption of Innocence is not a Due Process
                Violation for Summary Violations (Count I).......................................... 6

        B.      The Notices are Not Misleading in Violation of the Fifth and Fourteenth
                Amendments (Count II) ........................................................................ 12

        C.      The Notices are Not Deficient, and Even if They Were, Deficiency is Not
                a Due Process Violation under the Fifth or Fourteenth Amendments
                (Count III) ............................................................................................. 13

        D.      The Notices are not Deficient or Misleading and cannot form the basis of a
                due Process Violation Under the Pennsylvania Constitution (Count IV)............. 20

        E.      No Facts Support Plaintiffs' Claim against Mayor Cherelle Parker (Counts
                I-V)......................................................................................................... 20

V.      CONCLUSION................................................................................................. 24

CITY DEFENDANTS' CERTIFICATE OF GOOD FAITH...................................... 25

CERTIFICATE OF SERVICE ................................................................................... 27

# TABLE OF AUTHORITIES

Cases

Allen v. Illinois,
  478 U.S. 364, 106 S. Ct. 2988, 92 L. Ed. 2d 296 (1986)............................................ 8

Anspach v. City of Phila.,
  503 F.3d 256 (3d Cir. 2007) ...................................................................................... 6

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ................................................................................................... 6

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................................... 6

Bower v. Lawrence Cnty. Child. & Youth Servs.,
  964 F. Supp. 2d 475 (W.D. Pa. 2013) ............................................................... 25, 27

Boyde v. California,
  494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990).................................... 10

Cleveland Bd. of Educ. v. Loudermill,
  470 U.S. 532 (U.S. 1985) ........................................................................................ 21

Cnty. Concrete Corp. v. Town of Roxbury,
  442 F.3d 159 (3d Cir. 2006) ...................................................................................... 8

Evans v. Sec'y Pennsylvania Dep't of Corr.,
  645 F.3d 650 (3d Cir. 2011) ...................................................................................... 7

Fields v. Durham,
  909 F.2d 94 (4th Cir. 1990) ....................................................................................... 9

Hill v. Borough of Kutztown,
  455 F.3d 225 (3d Cir. 2006) ............................................................................... 9, 21

Hughes v. City of Cedar Rapids, Iowa,
  840 F.3d 987 (8th Cir. 2016) ..................................................................................... 9

In re Heinz,
  316 A.3d 1062 (Pa. Commw. Ct. 2024) ....................................................... 8, 9, 10, 11

In re in Re: Ronald Mickel v. in Re: Ronald Mickel,
  2024 WL 3890379 (Pa.Com.Pl. July 22, 2024)...................................................... 12

Kennedy v. Mendoza-Martinez,
  372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963)............................................. 8

Kost v. Kozakiewicz,
  1 F.3d 176 (3d Cir. 1993) .......................................................................................... 6

Kovler v. Bureau of Admin. Adjudication,
  6 A.3d 1060 (Pa. Commw. 2010).................................................................... 22, 23

Mathews v. Eldridge,
  424 U.S. 319 (U.S. 1976) ................................................................................. 22, 23

Morgan v. Martinez,
  2015 WL 2233214 (D.N.J. 2015) ........................................................................... 17

Nicholas v. Pennsylvania State Univ.,
    227 F.3d 133 (3d Cir. 2000) ........................................................................ 7
Philadelphia, King v. City of Philadelphia,
    654 Fed.App'x., 107. (3d Cir. 2016) ........................................................ 22
Sandstrom v. Montana,
    442 U.S. 510, (1979) ................................................................................ 10
Santiago v. Warminster Twp.,
    629 F.3d 121 (3d Cir. 2010) ..................................................................... 24
Tulp v. Educ. Comm'n for Foreign Med. Graduates,
    376 F.Supp.3d 531 (E.D.Pa. 2019) .................................................... 12, 24
United States v. Simmons,
    2023 WL 157992 (M.D.Pa., 2023) ........................................................... 18
Van Harken v. City of Chicago,
    103 F.3d 1346 (7th Cir. 1997) .................................................................. 22
Wells v. City of Wilmington, Delaware,
    257 F. Supp. 3d 628 (D. Del. 2017) ........................................................... 8
Zinermon v. Burch,
    494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ............................. 9

Statutes

42 U.S.C. § 1983 ................................................................................ 7, 12, 22
75 Pa. C.S.A. § 1331 ................................................................................... 17
75 Pa. C.S.A. § 1331(b) .............................................................................. 17
75 Pa. C.S.A. § 1332(a) .............................................................................. 17
75 Pa. C.S.A. § 1333(b) .............................................................................. 17
75 Pa.C.S.A. § 3116 ..................................................................... 1, 21, 23
75 Pa.C.S.A. § 3116(b) and § 3370(b) ......................................................... 2
75 Pa.C.S.A. § 3116(c) ................................................................................. 3
75 Pa.C.S.A. § 3116(d)(1) ............................................................................ 2
75 Pa.C.S.A. § 3116(d)(4) and § 3370(d)(5) ......................................... 2, 10
75 Pa.C.S.A. § 3116(e)(1) and § 3370(f)(1) ................................................ 2
75 Pa.C.S.A. § 3116(f) and § 3370(g) .......................................... 3, 12, 13
75 Pa.C.S.A. § 3116(f)(1) and § 3370(g)(1) ................................................ 3
75 Pa.C.S.A. § 3116(h)(1) and § 3370(i)(1) ................................................ 2
75 Pa.C.S.A. § 3116(h)(3) ........................................................................... 19
75 Pa.C.S.A. § 3116(l)(3) and § 3370(m)(3) ............................................... 3
75 Pa.C.S.A. § 3116(m) and § 3370(n) ........................................................ 3
75 Pa.C.S.A. § 3116(m)(3) and § 3370(n)(3) ............................................... 3
75 Pa.C.S.A. § 3370 ..................................................................... 2, 21, 23
75 Pa.C.S.A. § 3370(c) .................................................................... 3, 19, 20
75 Pa.C.S.A. § 3370(e) ................................................................................. 2
75 Pa.C.S.A. § 3370(i)(3)(ii) ...................................................................... 19
75 Pa.C.S.A § 3116(h) .................................................................... 13, 16, 18
75 Pa.C.S.A § 3370(g) .................................................................... 13, 14, 15
75 Pa.C.S.A § 3370(i) .................................................................... 13,14,16,17

Rules

Fed. R. Civ. P. 8(a)(2) ........................................................................................................... 6
Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 2, 5, 6

## I.    INTRODUCTION

This case is about the City of Philadelphia's automated traffic enforcement programs, namely the Automated Red Light Enforcement Program (ARLE) and Automated Speed Enforcement Program (ASE). The red light and speed camera programs operate on various roads throughout Philadelphia, including Roosevelt Boulevard, a busy traffic artery that runs through North and Northeast Philadelphia. The automated enforcement programs have reduced accidents and saved lives.

Plaintiffs are 7 individuals who received speeding or red-light camera tickets and paid their fines, either before or after appealing the tickets. They bring claims against the City of Philadelphia and the Philadelphia Parking Authority ("PPA"), as well as Mayor Cherelle Parker and several individuals at PPA.

Plaintiffs present claims under the Fifth and Fourteenth Amendments to the US Constitution, but their factual allegations are demonstrably inaccurate based on the Complaint and exhibits attached thereto. In addition, Plaintiffs' due process claims are legally insufficient and their assertion of a civil conspiracy is entirely unfounded. City defendants seek dismissal of all counts against the City and Mayor Parker.

## II.    BACKGROUND

### A.    Relevant Factual Allegations[1]

#### *Statutory Background*

In 2002, the Pennsylvania General Assembly created the Automated Red Light Enforcement ("ARLE" or "red light") program. Compl. ¶27, Act 123 of 2002, codified at 75 Pa.C.S.A. § 3116. In 2018, the General Assembly created the Automated Speed Enforcement

---

[1] The City Defendants accept the truth of Plaintiffs well-pleaded factual allegations for purposes of this filing only.

("ASE" or "speed camera") program.  Compl. ¶ 30, Act 86 of 2018, codified at 75 Pa.C.S.A. §
3370.

Both programs are available to the City of Philadelphia pursuant to enabling legislation
from City Council.  See Philadelphia Code § 12-3000 (red light program) and § 12-3400 (speed
camera program). The automated enforcement programs are administered by PPA, with
oversight from the Pennsylvania Secretary of Transportation. Compl ¶¶ 27, 28, 30.

Both automated enforcement programs place cameras at statutorily designated locations,
with signs alerting the public. See 75 Pa.C.S.A. § 3116(h)(1) and § 3370(i)(1). The cameras are
not allowed to face the front of the vehicle. 75 Pa.C.S.A. § 3116(e)(1) and § 3370(f)(1). The
cameras record potential violations and flag for review vehicles that are speeding or violating the
red light. PPA reviews all potential violations first before sending them to the Philadelphia
Police Department ("PPD") for final approval. Compl. Exh. A, p. 12. If approved by a PPD
officer, the notice of violation is issued to the registered owner of the vehicle. Compl. ¶ 64. State
law specifically provides that "the owner of the vehicle shall be liable for the penalty
imposed…." Compl. ¶ 118, 75 Pa.C.S.A. § 3116(b) and § 3370(b).

A violation under either program "shall not be deemed a criminal conviction." 75
Pa.C.S.A. § 3116(d)(4) and § 3370(d)(5). Likewise, receiving a violation under either program
does not count toward "points" on the recipients' license under Vehicle Code section 1535. Id.
Moreover, violations issued under either of the automated enforcement programs are not
reported to insurance companies for purposes of calculating premiums. Id. Violation recipients
are not liable for the penalty imposed if they are also convicted of the moving violation through
another section of the Vehicle Code. 75 Pa.C.S.A. § 3116(b) and § 3370(b); Phila. Code. § 12-
3003(1) and § 12-3408(1). The penalty for a red light violation is $100. 75 Pa.C.S.A. §

3116(d)(1); Phila. Code. § 12-3006(1). No violation for speeding is enforced through the automated speed program unless the vehicle is traveling at least 11 miles per hour in excess of the posted speed limit. 75 Pa.C.S.A. § 3370(e). Penalties for violating the posted speed limit are $100 for 11-19 miles per hour over, $125 for 20-29 miles per hour over, and $150 for 30 miles per hour or more over. No more than three violations can incur within any thirty minute period. Phila. Code. § 12-3406. Payment of the fine and any applicable penalties "shall operate as a final disposition of the case." 75 Pa.C.S.A. § 3116(l)(3) and § 3370(m)(3).

Should the owner contest a violation, a hearing is scheduled. Compl. ¶ 107,  75 Pa.C.S.A. § 3116(m) and § 3370(n). The hearing officer is designated by the City of Philadelphia's Office of Administrative Review ("OAR"). Compl. ¶ 107. At a red light hearing, PPA must provide evidence, including a certificate sworn to or affirmed by a PPD Officer based on inspection of the images produced by the red light camera system. So long as it includes documentation that the system's equipment was working properly, this certificate is prima facie evidence of the facts contained in it. Phila Code § 12-3010(c), see also 75 Pa.C.S.A. § 3116(c). At a speed camera hearing, the Violation Notice itself is prima facie evidence, as long as it contains the required authentication from a PPD Officer and written documentation that the speed enforcement system was operating correctly at the time of the violation. Phila Code § 12-3409(4)(a), See also 75 Pa.C.S.A. § 3370(c).

The state laws offer a list of affirmative defenses, including that the owner was not driving at the time of the violation, that the vehicle was stolen and reported stolen, or that the person receiving the violation notice was not the owner of the vehicle. 75 Pa.C.S.A. § 3116(f) and § 3370(g). If the vehicle owner contests the violation on the basis that they were not driving at the time of the violation, then they "may be required to submit evidence" that they were not

driving but are not required to "disclose the identity of the driver of the motor vehicle at the time of the violation." Compl. ¶ 117, 75 Pa.C.S.A. § 3116(f)(1) and § 3370(g)(1). If the Owner does not agree with the hearing officer's determination, they have the right to appeal. 75 Pa.C.S.A. § 3116(m)(3) and § 3370(n)(3).

The City of Philadelphia does not directly receive revenue from the programs. PPA collects fine revenue from the programs, pays associated costs, and disburses the net revenue to the state. Compl. Exh. A, p. 8 (ASE program), Exh. B, p. 9 (ARLE program).  The City of Philadelphia is reimbursed for its expenses related to the programs, specifically the time spent on PPD review and Office of Administrative Review hearings. Id. The net revenue is held by PennDOT and used for the Transportation Enhancements Grant Program. Compl. Exh. B., p. 3. In Fiscal Year 2023, for example, these grants were distributed to 39 different municipalities throughout the state. Compl. Exh. B., p. 8.

### *The Plaintiffs and Proposed Classes*

Plaintiffs are 7 drivers who received notices of speed violations, red light violations, or both.  Plaintiffs Jung, Smith, Simpson, Williams, and Lawton each paid the imposed fines without contesting them. Compl. ¶¶ 83, 86, 85, 93, 89. Plaintiff Kelly contested the violation and attended a hearing, where he was found liable and subsequently paid the fine. Compl, ¶¶ 78-81. No specific allegation regarding receiving a violation is made with regard to Plaintiff Robert Thomas.

Plaintiffs propose establishing a class action with the following classes:

- Class A: anyone who received a notice of violation and paid the fine since February 21, 2023;

- Class B: anyone who received a notice of violation and paid the fine, but

was not driving at the time of the violation, since February 21, 2023.

(Compl. ¶ 128)

### B.    Procedural History

Plaintiffs filed the instant suit on February 21, 2025. The Complaint includes five Counts.

Counts I-III are § 1983 claims for alleged violations of substantive due process under the Fifth and Fourteenth Amendments of the US Constitution. Count I alleges a violation of due process because Plaintiffs argue the law creates a mandatory rebuttable presumption of liability for the owner of the vehicle.  Count II alleges a due process violation because the text of the violation notice does not include a list of the affirmative defenses provided by the law. Count III alleges deficiencies in the written violation notice, in that Plaintiffs claim the notices lack the vehicle registration number, as required by state law, and documentation that the automated enforcement mechanism is operating properly. Count III also contains another claim that the programs violate due process because the notices do not contain a list of all affirmative defenses.

Count IV incorporates the same claims as Counts I-III, but brings them pursuant to Article 1, Section 1 of the Pennsylvania Constitution, and claims the analysis is the same as under the Fifth and Fourteenth Amendments to the US Constitution.

Count V is a civil conspiracy claim against all of the individual defendants.  The Complaint states that "one or more" defendants participated in a conspiracy to draft deficient and misleading Notices used in the automated enforcement programs.

The City Defendants move to dismiss each of these claims under Fed. R. Civ. P. 12(b)(6).

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the allegations contained in a Complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). Under the Federal Rules of

Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a complaint fails to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6) permits dismissal of the complaint.

When considering such a motion, the Court examines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is insufficient to allege "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. Instead, a plaintiff must provide fair notice of the nature of the claim and the grounds on which the claim or entitlement to relief rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 & n.3 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." Id. Put differently, the Court should not credit a plaintiff's "bald assertions" or "legal conclusions." Anspach v. City of Phila., 503 F.3d 256, 260 (3d Cir. 2007).

IV.    **ARGUMENT**

Plaintiffs' due process claims are misplaced because the fines at issue are merely civil penalties, for which there are more than adequate due process protections. Likewise, Plaintiffs' allegations of deficiencies or misleading statements in the violation notices demonstrate a misunderstanding of the relevant statutes. Finally, Plaintiffs' threadbare assertions against Mayor Parker are insufficient because they fail to allege personal involvement and also fail under the Iqbal/Twombly standard.

   A.    **Mandatory Rebuttable Presumption of Innocence is not a Due Process Violation for Summary Violations (Count I).**

In Count I, Plaintiffs bring a claim pursuant to 42 U.S.C. § 1983 for violation of due process under the Fifth and Fourteenth Amendments to the US constitution. While it is not

expressly stated, it appears Plaintiffs are alleging both substantive and procedural due process violations. Cf. Compl. ¶¶ 150, 157.

### *The Substantive Due Process Analysis*

Count I brings a facial challenge to the legislation creating the automated enforcement programs. Compl. ¶ 161 (the state laws "violate the Fifth and Fourteenth Amendments and are therefore facially invalid"). Specifically, Plaintiffs challenge the element of the laws that states that a vehicle owner "shall be held liable for violations" unless they "can prove they were not the driver." Compl. ¶ 155.  Plaintiffs allege that this creates a "mandatory rebuttable presumption against vehicle owners," which is "conduct that is so arbitrary as to constitute an abuse of governmental authority" and is barred "regardless of the fairness of the procedures used to implement them." Compl. ¶¶ 153 ,150.

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs." Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 659 (3d Cir. 2011). The analysis begins by defining "the exact contours of the underlying right said to have been violated." Id. Next, courts must determine whether legislative or executive actions are being challenged because a "different analysis is applicable depending on which capacity is implicated. Id. "[T]ypically, a legislative act will withstand substantive due process challenge if the government identifies the legitimate state interest that the legislature could rationally conclude was served by the statute." Cnty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006). "[I]nvalidation of legislation for 'irrationality' or 'arbitrariness,' is proper *only if the governmental body could have had no legitimate reason for its decision."* Id. (emphasis in original).

As a threshold matter, "[i]n determining the constitutionality of red-light camera programs, it must first be determined whether a violation … is characterized as civil or criminal in nature." <u>Wells v. City of Wilmington, Delaware</u>, 257 F. Supp. 3d 628, 634 (D. Del. 2017). Courts perform this analysis by first asking whether the legislature's intent was to punish, and if not, whether the statute in question creates a system so punitive that it nevertheless acts as punishment. <u>See, e.g.</u>, <u>Allen v. Illinois</u>, 478 U.S. 364, 373, 106 S. Ct. 2988, 2994, 92 L. Ed. 2d 296 (1986) (Illinois legislature did not intend to punish involuntarily committed mental patients, and measures taken to protect others did not render the statute "punitive."). To decide the latter prong, Courts rely on the "Mendoza-Martinez" factors as useful guideposts. <u>Id</u>. (referencing <u>Kennedy v. Mendoza-Martinez</u>, <u>372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644</u> (1963)). These factors are not exhaustive, but include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment - retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. <u>See In re Heinz</u>, 316 A.3d 1062, 1065 (Pa. Commw. Ct. 2024), <u>reargument denied</u> (July 11, 2024), <u>appeal denied,</u> No. 243 EAL 2024, 2025 WL 599843 (Pa. Feb. 25, 2025) (Philadelphia's automated speed enforcement system is a civil penalty, not criminal, applying <u>Allen</u> and the <u>Mendoza-Martinez</u> factors) (internal citations omitted).

### ***Applying the Substantive Due Process Analysis to the Instant Case***

To begin with, the penalties imposed by the automated enforcement programs are civil penalties, not criminal. <u>See In re Heinz</u>, 316 A.3d 1062, 1073 (Pa. Commw. Ct. 2024),

(analyzing the speed camera fine and concluding that "the penalty is indeed civil"), See also 75 Pa.C.S.A. § 3116(d)(4) and § 3370(d)(5) (these penalties "shall not be deemed a criminal conviction"). Moreover, a small fine "with no further penalty or criminal liability, and no impact on an individual's driving or insurance records, is not oppressive." In re Heinz at 1076.

Plaintiffs' assertion that criminal procedural protections should apply in this context is unpersuasive. In the Complaint, Plaintiffs cite Sandstrom v. Montana, 442 U.S. 510, (1979), holding modified by Boyde v. California, 494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990), for the proposition that a mandatory rebuttable presumption is unconstitutional because it violates an accused's right to due process of the law.  Compl. ¶ 154. However, the defendant in the Sandstrom matter was a criminal defendant facing a charge of deliberate homicide. That is a far cry from a vehicle owner facing a non-criminal civil penalty of a modest fine. Because the penalty is civil, "analysis under the rubrics of criminal law is inappropriate." Agomo v. Fenty, 916 A.2d 181, 193–94 (D.C. 2007) (internal citations omitted) (analyzing a due process claim against Washington D.C.'s automated traffic enforcement program).  Indeed, "presumption of liability is not a novel concept in civil cases [and] the Supreme Court has stated that a presumption is valid as long as it does not preclude a defense." Id.

Plaintiffs fail to assert that a fundamental right is at issue. It is clear that no liberty interest, impingement on the right to travel, or even oppressive financial burden is implicated by the automated traffic enforcement programs. There can be no fundamental right to speed 11 miles or more over the posted speed limit or run red lights and endanger fellow drivers or pedestrians. See generally Douris v. Huff, 260 F. App'x 441, 443 (3d Cir. 2008) (right to travel is "subject to reasonable time, place, and manner restrictions"). Having failed to assert that a fundamental right is at issue, Plaintiffs have failed to state a substantive due process claim.

Additionally, though Plaintiffs challenge a legislative act, it is obvious that the legislature had a legitimate reason to create the automated enforcement programs. There is nothing irrational or arbitrary in the Commonwealth and the City of Philadelphia deterring speeding and preventing drivers from running red lights because these dangerous behaviors cause crashes, injuries, property damage, and deaths. The small fines imposed under the automated enforcement programs deter these dangerous behaviors. Compl, Exh. A, p.1 ("vehicles are slowing down at the locations where speed cameras are installed … using summary data from 2019 and 2021, total crashes declined on the Boulevard by 36%, whereas the rest of the city they only declined by 6%."), Compl. ¶ 29 ("… The Red Light Camera Program has dramatically reduced red light violations wherever it has been installed, thereby preventing many 'T-Bone' accidents"). Thus the government's creation of the automated enforcement programs, including the owner liability element, is rationally related to a strong governmental interest and enforced fairly. The Complaint fails to state any claim about the automated enforcement programs that is arbitrary, capricious, or shocking. Therefore, the Plaintiffs' substantive due process challenges should fail because Plaintiffs fail to adequately state any element of a substantive due process claim.

### *The Procedural Due Process Analysis*

Plaintiffs also appear to allege a procedural due process challenge in Count I. They claim that the "enforcement" of the automated enforcement programs gives rise to a constitutional violation and that violation is "compounded by misleading notices." Compl. ¶¶ 156, 157.

To be successful on such a claim, a "plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006). It is well-established

that, "to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." <u>Fields v. Durham</u>, 909 F.2d 94, 97 (4th Cir. 1990) (citing <u>Zinermon v. Burch</u>, 494 U.S. 113, 110 S.Ct. 975 (1990)). <u>See also</u> <u>Hughes v. City of Cedar Rapids, Iowa</u>, 840 F.3d 987, 994 (8th Cir. 2016) (Applying the procedural due process analysis to an automated enforcement program and opining that "[t]o demonstrate a procedural-due-process violation, the drivers must show a deprivation of life, liberty, or property without sufficient process.").

### ***Applying the Procedural Due Process Analysis to the Instant Case***

Here, the interests at risk are small fines of, at most, a few hundred dollars.  The vehicle owner's liberty is not at risk, nor is a criminal record, points on their license, or even a report to their insurance company. And even Plaintiffs recognize that the automated enforcement programs provide "numerous procedural due process protections." Compl. ¶ 48, citing <u>In re Heinz</u>, 316 A.3d 1062, 1074 (Pa. Commw. Ct. 2024). In comparison to the property interests at risk, the process and review provided is generous. First, the potential violation is reviewed by a PPA employee. Second, it is reviewed by a PPD Officer, and only then can the violation be issued. Third, the vehicle owner has 30 days to appeal to the BAA, where they are not restricted by the technical rules of evidence. Fourth, if the vehicle owner is not happy with the decision of the BAA hearing officer, they can appeal to the Philadelphia Municipal Court, traffic division. Fifth, if still unsatisfied, the vehicle owner can appeal to the Court of Common Pleas. Of course, any decision of the Court of Common Pleas can be appealed as of right to the appellate court. <u>See generally</u> <u>In re in Re: Ronald Mickel v. in Re: Ronald Mickel</u>, No. 230900406, 2024 WL 3890379, at *2 (Pa.Com.Pl. July 22, 2024) (detailing the procedural process Plaintiff followed from disputing two red light tickets through an appeal to the Superior Court).

Plaintiffs clearly had a meaningful opportunity to be heard. As evidenced by the reminder of violation notice they were informed of their right to request a hearing (Compl. Exh. C) and one named Plaintiff took advantage of that opportunity. Compl. ¶ 80. Moreover, the statutes provide affirmative defenses available only to the recipients of tickets from the automated enforcement programs. 75 Pa.C.S.A. § 3116(f) and § 3370(g). Considering the panoply of pre and post deprivation process afforded to ticket recipients here, including the accessible nature of the appeal process and guaranteed right to be heard, there is more than sufficient process available to protect the rights of those who receive tickets from the automated enforcement programs. Plaintiffs' claims under Count I should be dismissed.

### B.    The Notices are Not Misleading in Violation of the Fifth and Fourteenth Amendments (Count II)

Plaintiffs allege that the Red Light and Speed Camera violation notices are misleading, resulting in a violation of the due process safeguards of the Fifth and Fourteenth Amendments. Plaintiffs make a 42 U.S.C. § 1983 claim related to these alleged violations. "To maintain a Section 1983 claim, Plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law." Tulp v. Educ. Comm'n for Foreign Med. Graduates, 376 F.Supp.3d 531, 540 (E.D.Pa. 2019).

Plaintiffs argue that the violation notices contain misleading language, which induced Class A Members to pay a fine and induced Class B members to mistakenly believe they were liable for the violation. Plaintiffs take issue with this specific sentence found on violation notices: "[a]s the registered owner of the vehicle, you are liable to pay a fine…" Compl. ¶ 68.

Plaintiffs claim the violation notices are misleading because they do not inform vehicle owners of affirmative defenses to liability. Compl. ¶ 70. Plaintiffs cite no law or case that tasks PPA or any other defendant with the duty to inform violators of an exhaustive list of affirmative

12

defenses to fulfill due process requirements for a traffic violation. The City is also not aware of any law or case that creates such a duty.

75 Pa.C.S.A § 3116(f) and 75 Pa.C.S.A § 3370(g) outline the four affirmative defenses to a red light or speed camera violation. Additionally, 75 Pa.C.S.A § 3116(h) and 75 Pa.C.S.A § 3370(i) are titled "Duty of City" and specify what information must be attached to a violation notice. None of these sections create a duty to provide the affirmative defenses on the violation notice, even though these sections expressly control the affirmative defenses and violation notices under both camera programs. Because Plaintiffs have identified no source of law creating this duty, the challenge should fail for legal insufficiency.

### C.   The Notices are Not Deficient, and Even if They Were, Deficiency is Not a Due Process Violation under the Fifth or Fourteenth Amendments (Count III)

Plaintiffs argue that the violation notices are deficient because they do not conform to the statutory requirements of 75 Pa.C.S.A § 3370 and 75 Pa.C.S.A § 3116. Plaintiffs claim that because the violation notices do not follow the statute creating them, the violation notices "do not provide the proper procedural safeguards as required by the Fifth and Fourteenth Amendments," and therefore should be void. Compl. ¶¶ 174, 176

Each of the deficiencies alleged by Plaintiffs contain factual inaccuracies. However, even if these factual inaccuracies did not exist, there still would be no violation of due process under the Fifth or Fourteenth Amendments. If, as Plaintiffs claim, the programs were in violation of the state statutes creating them (they are not), Plaintiffs could potentially assert a state law violation. But a violation of state law does not necessitate a Constitutional violation. First, we will discuss the factual deficiencies with these claims.

Plaintiffs allege 3 different ways that the notices of violation for both programs are deficient. First, "[t]he Speeding Notices and Red Light Notices do not attach the vehicle

registration number, a direct violation of 75 Pa. C.S.A § 3370(i)(3)(ii) and 75 Pa. C.S.A. § 3116(h)(3)." Compl. ¶ 175. Second, "[t]he Speeding Notice (sic) do not attach "written documentation that the automated speed enforcement system was operating correctly at the alleged time of the violation", which Plaintiffs claim is "a direct violation of 75 Pa. C.S.A § 3370(c)." Id. Finally, Plaintiffs claim that "the Speeding Notice and the Redlight Notice (sic) contain an affirmative misstatement of the law that, '[a]s the registered owner of the vehicle, you are liable to pay a fine…' without disclosing the defense available to the vehicle owner." Id.

### *Missing Vehicle Registration Numbers*

Plaintiffs are correct that 75 Pa.C.S.A. § 3370(i) and 75 Pa. C.S.A. § 3116(h) dictate that "the registration number and state of issuance of the vehicle registration must be attached to the violation." Plaintiffs are incorrect that this information is missing from the notices. The vehicle registration number and state of issuance are both displayed on a vehicle's license plate, which is included in a violation notice.

Violation notices for the Red Light and Speed Camera programs provide a photo of the car's license plate during the commission of the violation. A license plate is also known as a registration plate. A registration plate displays a vehicle's registration number. Plaintiffs' Exhibit C, which is a portion of a reminder notice of violation, contains a photo of the alleged violator's license plate. Compl. Exh. C. Therefore, the violation notice contains the vehicle registration number and state of issuance. To say the vehicle registration number is not included is simply inaccurate.

The Pennsylvania Legislature refers to license plates as registration plates in 75 Pa. C.S.A. § 1331. As a general rule, "[e]very registration plate shall, at all times, be securely fastened to the vehicle to which it is assigned or on which its use is authorized in accordance with regulations

promulgated by the department." 75 Pa. C.S.A. § 1332(a). Additionally, "[e]very registration plate shall have displayed upon it the identifying numbers or letters assigned to the vehicle, the name of the Commonwealth, which may be abbreviated, and any other data the department may deem necessary." 75 Pa. C.S.A. § 1331(b). The legislature specifically references registration numbers when discussing replacing registration plates. "Where the registration plate has been lost or stolen… the original registration shall be cancelled and substitute registration issued under a *new registration number* other than that originally issued. 75 Pa. C.S.A. § 1333(b)(emphasis added). This demonstrates that registration plates (otherwise known as license plates) do indeed bear the registration number.

Courts have acknowledged that license plates and registration plates are synonymous, and that registration plates show registration numbers. "New Jersey requires every owner of an automobile driven on public highways in the state to display a license plate depicting the vehicle's unique registration number." Morgan v. Martinez, 2015 WL 2233214 at *1 (D.N.J. 2015). In fact, some cases refer to a vehicle's registration number as a "registration plate number." "A search of the Pennsylvania Department of Transportation ("PennDOT") records database revealed the Escalade's *registration plate number* was assigned to a different vehicle, potentially in violation of the Pennsylvania Vehicle Code." United States v. Simmons, 2023 WL 157992 at *1 (M.D.Pa., 2023) (emphasis added). In Simmons, police pulled a vehicle over when the "registration plate number" did not match the vehicle it was assigned to. "The troopers eventually caught up to the Escalade, positioned their vehicle "slightly behind" it, and attempted to query its registration plate again." Id. Here the court is referring to the vehicle's license plate.

The Simmons court further discussed the license plate requirements of the motor vehicle code and expressly uses the term vehicle registration plate and license plate interchangeably. "The

Vehicle Code sets forth numerous requirements for operating a motor vehicle on the Commonwealth's roadways, several of which involve *vehicle registration (or license) plates*. A registration plate must at all times ... be securely fastened to the vehicle to which it is assigned, and it is unlawful to display a registration card or plate in, on or in connection with any vehicle other than the vehicle for which it was issued." Id. at 5. (internal citations and quotations omitted)(emphasis added).

Simmons demonstrates that license plates and registration plates are synonymous. Further, registration plates display a vehicle's registration number. Here, the Red Light and Speed Camera programs provide a photo of the license plate on the vehicle during the commission of the violation. Both 75 Pa. C.S.A § 3116(h) and 75 Pa. C.S.A § 3370(i) instruct that "[t]he registration number and state of issuance of the motor vehicle registration;" are required on the notice of violation. The license plate includes the registration number and state of issuance of the registration as instructed by 75 Pa. C.S.A § 3116(h) and 75 Pa. C.S.A § 3370(i). There is no violation of the state statute here, and certainly no Constitutional violation, therefore this challenge fails as a matter of law.

### ***Written Documentation of Camera Functionality***

Plaintiffs assert "[t]he Speeding Notice (sic) do not attach written documentation that the automated speed enforcement system was operating correctly at the alleged time of the violation, a direct violation of 75 Pa.C.S.A. § 3370(c)." Plaintiffs' Compl. ¶ 175. But 75 Pa.C.S.A. § 3370(c) simply states that a certificate of the camera's functionality is "prima facie evidence of the facts contained in it." There is no requirement that this certificate be attached to the violation notice. Therefore, it is challenging to see how not including it in the violation notice is a "direct violation" of these sections or of the Constitution. 75 Pa.C.S.A. § 3370(c) also instructs PPA that

it must have some written documentation that the speed camera was working at the time of the violation, and that documentation of the camera's functionality can be used as evidence of a speeding violation. While the statute states that this information may be presented at a hearing regarding the violation, it does require the information be included on the violation notice.

It seems that Plaintiffs are citing to the wrong part of the statute—namely, 75 Pa.C.S.A. § 3370(c)—to claim that there is a deficiency in the violation notices. Another part of the statute, Section 3370(i), is titled "Duty of City" and governs what must be attached to the violation notices. Section 3370(i) contains a total of five things that must be attached to a violation notice and does not include a certificate or documentation regarding the functionality of the camera system. Specifically, Section 3370(i) states that "[t]he notice of violation shall have *attached* to it a copy of the recorded image showing the vehicle; the registration number and state of issuance of the vehicle registration; the date, time, and place of the alleged violation; that the violation is charged under 3112(a)(3); and instructions for the return of the notice of violation." 75 Pa.C.S.A. § 3370(i) (emphasis added).

Because the applicable statutes do not require documentation regarding the camera system's functionality be attached to violation notices, Plaintiffs' claim fails.

### ***Alleged Misstatement of Law***

Once again in Count III, Plaintiffs assert that PPA has some duty to inform alleged violators of their affirmative defenses. "[T]he Speeding Notice and Red Light Notice contain an affirmative misstatement of law that, [a]s the registered owner of the vehicle, you are liable to pay a fine…." without disclosing the defense available to the vehicle owner." Compl. ¶ 175. This argument was addressed in Section IV B, *supra*. In sum, Plaintiffs do not point to the authority of law that makes this unlawful. It is Plaintiffs' burden to establish a legal duty that has been

violated. Plaintiffs have not identified any authority of law that creates this duty.

### *Even if the Notices were in violation of state law, this would amount to a due process violation*

The notices are not in violation of 75 Pa.C.S.A. § 3116 or 75 Pa.C.S.A § 3370, but even if they were, it would not amount to a violation of due process under the Fifth or Fourteenth Amendments. A violation of a state statute does not necessitate a constitutional violation. Additionally, courts have found that Philadelphia's parking regime does provide ample notice and multiple opportunities for review.

When analyzing traffic violations in Philadelphia, courts have determined that "violations of state or municipal law do not, standing alone, necessarily state constitutional claims under 42 U.S.C. § 1983." King v. City of Philadelphia, 654 Fed.App'x. 107, 111. (3d Cir. 2016). Additionally, the King court found that procedures very close to Philadelphia's provide the necessary due process. "In the context of traffic ticket enforcement and adjudication, procedures substantially similar to Philadelphia's—which provides ample notice and multiple opportunities for both administrative agency and state court review of disputed parking violations—satisfy the requirements of due process." Id. Additionally, the court referenced Van Harken v. City of Chicago, 103 F.3d 1346 (7th Cir. 1997) holding that Chicago's system, which provided only one level of administrative hearing before appeal to the state courts, was sufficient due process.

Kovler v. Bureau of Admin. Adjudication, 6 A.3d 1060 (Pa. Commw. 2010) also discusses Philadelphia's due process standards in reference to traffic tickets. Kovler, who received a parking ticket, argued that Philadelphia's procedures for adjudicating parking tickets contravened due process. Kovler did not specify if he was challenging under the due process clause of the U.S. Constitution or Pennsylvanian Constitution but because the clauses are treated as coextensive, the analysis was the same under federal and state law.

In sum, "Kovler contends that due process requires the opportunity to cross-examine the

ticket writer and that the BAA's procedures are unconstitutional because only the hearing examiner has the authority to compel the ticket writer's presence at the hearing." Id. at 1063. The court disagreed and referenced Van Harken's holding that Chicago's system for adjudicating parking violations satisfied due process. "*Van Harken* held that due process does not require the presence of the ticket writer at every hearing where the ticket is challenged….[T]he City of Chicago's system for adjudicating parking violations was virtually identical to the BAA's, including the provisions that parking tickets are prima facie evidence of a violation and that only the hearing examiner can require the ticket writer's presence at the hearing." Id. (internal citations omitted). The court was persuaded by Van Harken's reasoning and determined "the ticket writer's absence from Kovler's hearing did not constitute a violation of due process." Id.

These cases demonstrate that Philadelphia's procedures do not constitute a violation of the due process requirements of the U.S. or Pennsylvania Constitution. Due Process guarantees timely notice and hearing. Here, the Plaintiffs have been afforded both timely notice and a chance to dispute the violations. Courts have reviewed the notice and hearing process in relation to parking tickets and found that due process has been fulfilled.  "Due process is not technical conception with fixed content unrelated to time, place and circumstances; rather, it is flexible and calls for such procedural protections as particular situation demands." Mathews at 334. 75 Pa.C.S.A. § 3116 and 75 Pa.C.S.A § 3370 both include multiple levels of review and appeal that fulfill the due process necessity for such violations. PPA has provided all of the procedural protections that the situation demands for, at most, a fine of a few hundred dollars. Therefore, this challenge should fail for legal insufficiency.

**D.    The Notices are not Deficient or Misleading and cannot form the basis of a due Process Violation Under the Pennsylvania Constitution (Count IV)**

We agree with Plaintiffs that a due process claim brought under the Pennsylvania Constitution is analyzed synonymously as a due process claim brough under the Fourteenth Amendment. Compl. ¶ 184. "Pennsylvania law "generally treat[s] the Due Process Clause of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution as coextensive." <u>Tulp v. Educ. Comm'n for Foreign Med. Graduates</u>, 376 F.Supp.3d 531, 540 n.3 (E.D.Pa., 2019).

Defendants incorporate the preceding paragraphs as though set forth in their entirety. As discussed in Section IV B and C, because Plaintiffs have not stated a claim for a Federal Constitutional violation or under the Pennsylvania Constitution, their claims should be dismissed.

**E.    No Facts Support Plaintiffs' Claim against Mayor Cherelle Parker (Counts I-V)**

***The Iqbal/Twombly Standard***

As noted above in Section III, under what has become known as the <u>Iqbal/Twombly</u> standard, Plaintiffs' pleadings must contain more than merely threadbare accusations and bald assertions. The U.S. Court of Appeals for the Third Circuit has distilled the <u>Iqbal/Twombly</u> standard into a three-part analysis. First, "the court must take note of the elements a plaintiff must plead to state a claim." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121,130 (3d Cir. 2010) (cleaned up). Second, "the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id</u>. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Id</u>. In analyzing a complaint, a court should

accept all well-pled factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

***Applying the Iqbal/Twombly Standard to the Assertions against Mayor Parker in the Instant Complaint***

Here, Counts I-IV are asserted against "all defendants" and Count V is asserted solely against "Individual Defendants," which would include Mayor Parker. Mayor Parker is being sued in her "individual and official capacity." Compl. ¶ 10.  Though it is not stated in the Complaint, Movant offers that the Court can take judicial notice of the fact that Mayor Parker was sworn into office on January 2, 2024.[2] On January 27, 2025, Mayor Parker signed a bill approving additional locations for placement of automated speed cameras. Compl. ¶ 39.

The only specific allegation of any action by Mayor Parker is signing legislation. Compl. ¶ 39.  She is otherwise generically described as one of the "Individual Defendants" who "exercise dominion and control over the Entity Defendants." Compl. ¶ 95.

Though Counts I-IV certainly contain allegations regarding the automated ticketing programs, these programs were fully in place by the date of the Mayor's inauguration. No assertion is made that the Mayor herself directed any changes to the programs or in any way directed her employees or attempted to influence the programs other than by signing an Ordinance. No assertion is made of any specific Executive Order, phone call, or even meeting regarding these programs.  Indeed, the only factual assertions against Mayor Parker specifically regarding these claims are bald and conclusory allegations that the Individual Defendants "worked together" to "implement and enforce" the programs and "worked together" to "draft, create, finalize and implement" the program Notices. Compl. ¶¶ 103, 104. There is no indication

---

[2]*See* https://www.phila.gov/departments/mayor/ (accessed April 11, 2025), and Compl. ¶ 96.

of when or how Plaintiffs allege that this "working together" occurred. An obvious omission is any assertion that the Programs or Notices are different after Mayor Parker assumed her office compared to before her term began.  The only factual assertion made is the conclusory statement that the "Individual Defendants, through the Entity Defendants, issued and/or caused to be issued the Notices to Plaintiffs." Compl. ¶ 106.

The lack of a sufficiently pled factual foundation is even more stark for Count V, which alleges a "Civil Conspiracy" against the Individual Defendants, including Mayor Parker.  Here, the factual allegations become somehow even more vague than the already-threadbare allegations of "working together." Although Mayor Parker is included in the list of target defendants in this Count, no allegation of any kind is made specifically against her. Instead, it is asserted that "[o]ne or more of the Defendants participated in a conspiracy to draft deficient and misleading Notices…." Compl. ¶ 186. Further, "[o]ne or more of the Individual Defendants participated in a conspiracy" to draft the Notices. Compl. ¶ 187. No effort is made to specify which of the 13 Individual Defendants is the "one or more" defendant(s) that in fact engaged in the alleged conspiracy, what actions they took in furtherance of the alleged conspiracy, when, or how. These threadbare and conclusory allegations fail to meet the <u>Iqbal/Twombly</u> standard.

### ***Plaintiffs have not pled facts to establish Mayor Parker's liability under 42 U.S.C. § 1983***

It is fundamental that "[l]iability under section 1983 cannot be imposed absent personal involvement in the alleged actions." <u>Surine v. Edgcomb</u>, 479 F. App'x 405, 407 (3d Cir. 2012) (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). "[T]he tenet that a defendant's § 1983 liability must be predicated on [defendant's] direct and personal involvement in the alleged violation has deep historical roots in tort law principles." <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 289 (3d Cir. 2018). "In the § 1983 context, these principles

have led the Supreme Court to require a showing of direct responsibility by the named defendant and to eschew any theory of liability in which defendants played no affirmative part in depriving any[one] . . . of any constitutional rights . . . including theories of vicarious or respondeat superior liability." Id. at 290. "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).As discussed *supra*, the only allegation with regard to Mayor Parker is that she signed legislation with respect to the camera enforcement systems. This is clearly insufficient to establish personal involvement by Mayor Parker in the violations Plaintiffs allege.

### *No Cognizable Conspiracy Claim is Stated in Count V*

To establish a constitutional conspiracy claim, Plaintiff must plead the following "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Bower v. Lawrence Cnty. Child. & Youth Servs., 964 F. Supp. 2d 475, 488 (W.D. Pa. 2013) (citations omitted).

A conspiracy claim is not adequately stated without a specific allegation of an individual defendant's involvement.  As discussed above, Plaintiff makes no allegations of specific actions that would implicate Mayor Parker in the conspiracy that is alleged in Count V. This total lack of specific allegations of her individual involvement is fatal to the claim of conspiracy made against

Mayor Parker.

Furthermore, a Civil Conspiracy must in fact deprive Plaintiffs of their rights. <u>Bower v. Lawrence Cnty. Child. & Youth Servs.</u>, 964 F. Supp. 2d 475, 488 (W.D. Pa. 2013) (element 4 cited *supra*: "whereby a person is either injured in his person or property or deprived of any right or privilege.") Here, as explained fully above, there is no violation of Plaintiffs' Constitutional rights and therefore no claim for Civil Conspiracy can withstand review.

### ***The Claims Against Mayor Parker Should be Dismissed***

The Complaint contains nothing more than bald assertions and threadbare, conclusory allegations regarding Mayor Parker for all counts, with no allegations regarding personal involvement by Mayor Parker in the violations alleged. Insufficient pleadings of this kind cannot sustain a cause of action against Mayor Parker, and the Movant seeks dismissal of Mayor Parker from this suit.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims as against City Defendants.

Respectfully submitted,
CITY OF PHILADELPHIA LAW DEPARTMENT

Dated: April 17, 2025

*/s/ William B. Shuey*
William B. Shuey, Senior Attorney (PA ID # 208792)
Dominique Holly, Assistant City Solicitor (PA ID # 335009)
Affirmative and Special Litigation
One Parkway Building, 15th Floor
1515 Arch Street, 15th Floor
Philadelphia, PA 19102-1595
Tel: (215) 683-2954
William.Shuey@phila.gov
Dominique.Holly@phila.gov
*Attorneys for Defendants City of Philadelphia and Mayor Cherelle Parker*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH JUNG, ROBERT THOMAS, DANIEL SMITH, ALEXANDER SIMPSON, PAUL KELLY, KYLE WILLIAMS, and TIPHANIE LAWTON, Individually and on Behalf of All Others Similarly Situated** <br>                         **Plaintiffs,** <br><br>        **v.** <br><br> **CITY OF PHILADELPHIA, PHILADELPHIA PARKING AUTHORITY, CHERELLE PARKER, LYNETTE M. BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W. TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD LAZER, GABE ROBERTS, CORINNE O'CONNOR, KEOLA HARRINGTON, ANTHONY KUCZYNSKI, and CASEY WECH** <br>                 **Defendants.** | **Civil Action No. 2:25-00956-MAK** |

**CITY DEFENDANTS' CERTIFICATE OF GOOD FAITH**

I hereby certify that I conferred in good faith with counsel for the Plaintiffs regarding the issues raised in this motion in accordance with the Court's policies and procedures at subsection II(B). All counsel for the various parties to this case joined a videoconference call on April 10, 2025 and the undersigned counsel explained to Plaintiffs' counsel the underlying reasons for the Motion to Dismiss, addressing each count and argument in turn. Plaintiffs' counsel advised that the issues will be presented to the Court. Undersigned counsel now submits the attached motion requesting the Court dismiss Plaintiffs' Complaint against the City Defendants.

Respectfully submitted,

25

|                        | CITY OF PHILADELPHIA LAW DEPARTMENT |
|------------------------|-------------------------------------|
| Dated: April 17, 2025  | William B. Shuey, Senior Attorney   |

*/s/ William B. Shuey*_____
William B. Shuey, Senior Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, I filed, via the Court's ECF system, a true and correct copy of the attached Defendants' Motion and Memorandum of Law in Support of Defendants' Motion to Dismiss, which will accomplish service on all parties.

Dated: April 17, 2025

> */s/ William B. Shuey*
> William B. Shuey, Senior Attorney (PA ID # 208792
> Affirmative and Special Litigation
> One Parkway Building, 15th Floor
> 1515 Arch Street, 15th Floor
> Philadelphia, PA 19102-1595
> Tel: (215) 683-2954
> William.Shuey@phila.gov
> *Attorney for Defendants City of Philadelphia and Mayor Cherelle Parker*