# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH JUNG, ROBERT THOMAS,　　　　:
DANIEL SMITH, ALEXANDER SIMPSON,　:
PAUL KELLY, KYLE WILLIAMS, and　　:
TIPHANIE LAWTON, Individually and on　:　**Civil Action No. 2:25-cv-00956-MAK**
Behalf of All Others Similarly Situated,　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　*Plaintiffs,*　　:
　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
CITY OF PHILADELPHIA,　　　　　　　:
PHILADELPHIA PARKING AUTHORITY,　:
CHERELLE PARKER, LYNETTE M.　　　:
BROWN-SOW, PATRICIA M. FURLONG,　:
BETH C. GROSSMAN, ALFRED W.　　　:
TAUBENBERGER, OBRA S. KERNODLE,　:
IV, MARK C. NICASTRE, RICHARD　　　:
LAZER, GABE ROBERTS, CORINNE　　　:
O'CONNOR, KEOLA HARRINGTON,　　　:
ANTHONY KUCZYNSKI, and CASEY　　　:
WECH,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　*Defendants.*　:

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS THE PHILADELPHIA PARKING AUTHORITY, LYNETTE M.
BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W.
TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD
LAZER, GABE ROBERTS, CORINNE O'CONNOR, KEOLA HARRINGTON,
ANTHONY KUCZYNSKI, AND CASEY WECH**

---

**OF COUNSEL**:

Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street
Suite 3500
Philadelphia, PA 19103
215-963-3300
Fax:  215-963-9999
pdoran@archerlaw.com
apearl@archerlaw.com

Patrick J. Doran
Amy E. Pearl
　*Attorneys for the PPA Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...................................................................................................................1

RELEVANT BACKGROUND ................................................................................................3

    A.  The Red Light and Speed Camera Programs in the City of Philadelphia............................3

    B.  Plaintiffs' Allegations ...................................................................................................5

ARGUMENT ...........................................................................................................................6

    A.  Standard of Review.......................................................................................................6

    B.  Plaintiffs' Procedural Due Process Claims Fail as a Matter of Law Because the
        Rebuttable Presumption of Owner Liability is Appropriate in the Context of a
        Civil Traffic Fine and the Laws Provide Sufficient Notice and an Opportunity to
        Challenge Violations......................................................................................................7

    C.  Plaintiffs' Substantive Due Process Claim Fail as a Matter of Law Because the
        Programs, Including the Rebuttable Presumption of Owner Liability, Are
        Rationally Related to Pennsylvania's Legitimate Interest in Public Safety ....................13

    D.  Plaintiffs' Conspiracy Claim Against the Individual PPA Defendants Fails
        Because There is No Underlying Constitutional Violation and Plaintiffs
        Otherwise Fail to Sufficiently Allege Any Conspiracy ....................................................16

    E.  Plaintiff Has Failed to State Any Valid Constitutional Claim Against the
        Individual PPA Defendants in Their Respective Individual Capacities ...........................17

        1.  Plaintiffs Fail to Allege That the Individual PPA Defendants Were Personally
            Involved in Any Alleged Constitutional Violation......................................................18

        2.  The Individual PPA Defendants Are Entitled to Qualified Immunity........................18

CONCLUSION........................................................................................................................20

Page(s)

**Cases**

Agomo v. Fenty, 916 A.2d 181 (D.C. Cir. 2007) ..........................................................14

Alexander v. Whitman, 114 F.3d 1392 (3d Cir. 1997) ................................................13

Anderson v. City of Phila., 845 F. 2d 1216 (3d Cir. 1988) .........................................8

Argesta v. City of Philadelphia, 801 F. Supp. 1464 (E.D. Pa. 1992), aff'd, 933
F.2d 223 (3d Cir. 1993) ..............................................................................................18

Armstrong v. Manzo, 380 U.S. 545 (1965) .................................................................8

Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074 (2011)..........................................19

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009)..............................................6

Baraka v. McGreevey, 481 F.3d 187 (3d Cir. 2007) ...................................................17

Barwood, Inc. v. District of Columbia, 202 F.3d 290 (D.C. Cir. 2000) .......................10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).....................6, 16

Bevis v. City of New Orleans, 686 F.3d 277 (5th Cir. 2012) .........................................9

Bevis v. City of New Orleans, No. 10-4161, 2011 WL 2899120 (E.D. La. July 18,
2011), aff'd, 686 F.3d 277 (5th Cir. 2012) ...................................................................7

Blake v. JPMorgan Chase Bank, N.A., 259 F. Supp. 3d 249 (E.D. Pa. 2017) .............20

City of West Covina v. Perkins, 525 U.S. 234, 119 S.Ct. 678 (1999).........................12

Collins v. City of Harker Heights, 503 U.S. 115 (1992) .............................................13

Elkin v. Fauver, 969 F.2d 48 (3d Cir. 1992).................................................................11

Francis v. Franklin, 471 U.S. 307 (1985) ....................................................................7

Great Western Mining & Mineral Co. v. Fox Rothschild LLP,
615 F.3d 159 (3d Cir. 2010) ........................................................................................17

Harvard v. Cesnalis, 973 F.3d 190 (3d Cir. 2020)......................................................16

In re Heinz, 316 A.3d 1062 (Pa. Cmwlth. 2024), alloc. denied, 2025 WL 599843
(Pa. Feb. 25, 2025).............................................................................................. *passim*

Idris v. City of Chicago, Ill., 552 F.3d 564 (8th Cir. 2009) ....................................................14, 15

Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289 (3d Cir. 1988)....................................20

Jutrowski v. Township of Riverdale, 904 F.3d 280 (3d Cir. 2018) ............................................16

Ke v. Philadelphia Parking Authority, 831 Fed.Appx. 621 (3d Cir. 2020) .............................9, 10

Kedra v. Shroeter, 876 F.3d 424 (3d Cir 2017) ....................................................................18, 19

Kelly v. Borough of Carlisle, 622 F.3d 248 (3d Cir. 2010) ........................................................18

Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893 (1976) .....................................................8, 9, 10

Mendenhall v. City of Akron, 374 Fed.Appx. 598 (6th Cir. 2010) ..............................................9

Mobile, Jackson & Kansas City R. Co. v. Turnipseed, 219 U.S. 35,
31 S.Ct. 136 (1910)...................................................................................................................16

Nekrilov v. City of Jersey City, 45 F.4th 662 (3d Cir. 2022) .....................................................13

Nicholas v. Pennsylvania State University, 227 F.3d 113 (3d Cir. 2000) ....................................13

Pa. Game Comm'n v. Marich, 666 A.2d 253 (Pa. 1995)............................................................8

Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088 (2012) ........................................................19

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) ...............................................................18

Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450 (1979) .....................................................7

Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405 (3d Cir.),
cert. denied, 522 U.S. 977, 118 S.Ct. 435 (1997)..........................................................................3

Sevin v. Par. of Jefferson, 621 F. Supp. 372 (E.D. La 2009) ......................................................7

Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162 (3d Cir. 1989), abrogated on
other grounds, Beck v. Prupis, 529 U.S. 494, 120 S.Ct. 1608 (2000)...........................................17

Shoemaker v. City of Howell, 795 F.3d 553 (6th Cir. 2015) .......................................................11

Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140 (4th Cir. 2014) ........................9

Spady v. Bethlehem Area Sch. Dist., 800 F. 3d 633 (3d Cir. 2015)............................................18

State v. Dahl, 87 P.3d 650 (Or. 2004)..........................................................................................7

Sykes v. Carroll, 477 Fed.Appx. 861 (3d Cir. 2012) ..................................................................17

Tate v. District of Columbia, 627 F.3d 904 (D.C. Cir. 2010), cert. denied, 563 U.S. 980, 131 S.Ct. 2886 (2011) ...................................................................10

The Choice is Yours, Inc. v. The Choice is Yours, No. 14-01804, 2015 WL 5584302 (E.D. Pa. Sept. 22, 2015) ...................................................................6

Turk v. Com., Dep't of Transp., 983 A.2d 805 (Pa. Cmwlth. 2009) ...............................8

United States v. Mitchell, 652 F.3d 387 (3d Cir. 2011), cert. denied, 565 U.S. 1275, S.Ct. 1741 (2012)...........................................................................13

United States v. Salerno, 481 U.S. 739 (1987) ...............................................................13

Ware v. Lafayette City-Par. Consol. Gov't, No. 08-0218, 2009 WL 5876275 (W.D. La. Jan. 6, 2009) ....................................................................................14

Wash. State Grange v. Wash. State Republic, 552 U.S. 442 (2008) .............................13

In re Winship, 397 U.S. 358 (1970)...................................................................................7

Woodard v. Andrus, 419 F.3d 348 (5th. Cir. 2005).......................................................11

Worthy v. City of City of Phenix City, Ala., 930 F.3d 1206 (11th Cir. 2019) ..........7, 14

**Statutes**

75 Pa.C.S.A. § 3116............................................................................................ *passim*

75 Pa.C.S.A. § 3370............................................................................................ *passim*

Phila. Code § 12-3007...........................................................................................3

Phila. Code § 12-3405........................................................................................3, 12

Phila. Code § 12-3406...........................................................................................4

Phila. Code § 12-3409..........................................................................................12

<u>**INTRODUCTION**</u>

Like many other cities, the City of Philadelphia (the "City") uses automated traffic systems to enforce certain red light and speed limit restrictions. And like many other cities, the City imposes liability for violations on the vehicle's owner subject to enumerated defenses, including the owner's ability to prove that he or she was not operating the vehicle. These programs are expressly authorized and governed by Pennsylvania statute, codified in the Pennsylvania Vehicle Code at 75 Pa.C.S.A. § 3116 ("Red Light Program") and 75 Pa.C.S.A. § 3370 ("Speed Camera Program").

Plaintiffs, a proposed class of individuals who have paid fines pursuant to these Programs, allege that these laws violate their constitutional rights. The crux of Plaintiffs' claim is that the ***rebuttable presumption*** of owner liability violates both their procedural and substantive due process rights as a matter of law. Plaintiffs further allege that the violation notices processed by Defendant, the Philadelphia Parking Authority ("PPA") – which administers the Programs for the City (but does not ***issue*** violations) – deprive them of their procedural due process rights because they are misleading and deficient. Plaintiffs also claim members of PPA's board, various PPA employees, and the City's current mayor conspired to violate their constitutional rights.

Each of Plaintiffs' claims fail. Indeed, in <u>In re Heinz</u>, 316 A.3d 1062 (Pa. Cmwlth. 2024), <u>alloc. denied</u>, 2025 WL 599843 (Pa. Feb. 25, 2025) ("<u>Heinz</u>"), the Commonwealth Court of Pennsylvania recently held that the Speed Camera Program – which is in all material respects similar to the Red Light Program – imposes civil rather than criminal fines, and thus rejected similar procedural and substantive due process attacks, as well as other constitutional challenges. <u>Heinz</u> is consistent with a consensus of authority holding that similar automated traffic enforcement laws are civil rather than criminal and thus pass constitutional muster, including

1

with respect to the core feature of these laws: the rebuttable presumption of owner liability. Otherwise, these Programs provide ample notice and an opportunity to be heard – a notice of violation is sent to the registered owner which apprises the owner of the underlying violation and his or her ability to request a hearing to contest liability. Plaintiffs' allegations that the specific notices processed by PPA are misleading or fail to comply with the statutory requirements, even if true, do not otherwise give rise to a valid procedural due process claim.

Plaintiffs' substantive due process claims fare no better. As explained in <u>Heinz</u>, these Programs pass the low bar of rational basis review considering the important public safety interests they serve. Again, other courts have consistently rejected the same claim Plaintiffs raise here, and there is no reason to stray from this consensus of authority.

Plaintiffs' conspiracy claim against the Individual Defendants should be given short shrift. Plaintiffs have not demonstrated the existence of a constitutional violation. Even if they had, Plaintiffs' conclusory allegations of a ***conspiracy*** fall far short of the pleading standard. Likewise, there is no basis for any of the claims asserted against the Individual PPA Defendants because Plaintiffs fail to sufficiently allege any ***personal*** involvement and, even if they had, these defendants would be entitled to qualified immunity given the lack of any consensus of authority supporting Plaintiffs' theory (the consensus is, in fact, clearly to the contrary).

As there is no plausible basis for Plaintiffs to state any valid claims given these fundamental legal defects, this Court should dismiss Plaintiffs' Complaint with prejudice.

**A.    The Red Light and Speed Camera Programs in the City of Philadelphia**

The Pennsylvania Legislature authorized municipalities to adopt Red Light Programs in 2002 and Speed Camera Programs in 2018.  The City in turn adopted ordinances to implement these Programs, as codified in the Philadelphia Traffic Code.[2]  PPA serves as the City's system administrator for each Program and supervises and coordinates the administration of notices of violations (which only may be ***issued*** by the police). 75 Pa.C.S.A. § 3116(h)(2); 75 Pa.C.S.A. §3370(h)(i)(2).

In all respects material to Plaintiffs' claims, the legislative scheme for these Programs is substantially similar.  Both statutes require that a notice of violation be mailed to the vehicle's owner of record. 75 Pa.C.S.A. § 3116(j), (k); 75 Pa.C.S.A. § 3370(k), (l).  PPA is charged with preparing and mailing these notices (which are ***issued*** by the police, not PPA). 75 Pa.C.S.A. § 3116(h)(3); 75 Pa.C.S.A. § 3370(i)(3); Phila. Code § 12-3007(1); Phila. Code § 12-3405(1).

For both statutes, the notice of violation must include a copy of the picture showing the vehicle, the vehicle's registration number and state of issuance (i.e. the license plate), and the date, time, and place of the alleged violation. 75 Pa.C.S.A. § 3116(h)(3); 75 Pa.C.S.A. § 3370(i)(3).  The notice of violation must also indicate the respective law under which the violation is charged.  75 Pa.C.S.A. § 3116(h)(3); 75 Pa.C.S.A. § 3370(i)(3).

---

[1] The Relevant Background includes a recitation of the applicable statutes and the factual allegations set forth in Plaintiffs' Complaint, which are taken as true for the purposes of this Motion. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.), cert. denied, 522 U.S. 977, 118 S.Ct. 435 (1997).  The PPA Defendants reserve their right to deny Plaintiffs' factual allegations if this motion is denied in whole or in part.

[2] The City's Red Light and Speed Camera Programs are respectively codified at Chapters 12-3000 and 12-3400 of the Philadelphia Traffic Code.  In all material respects, the City's ordinances track the language of Section 3116 and Section 3370 of the Pennsylvania Vehicle Code, respectively.

The notice must apprise the registered owner of the right to contest the violation and obtain a hearing. 75 Pa.C.S.A. § 3116(h)(3); 75 Pa.C.S.A. § 3370(i)(3). Specifically, the notices must include the following language: "This notice shall be returned personally, by mail or by an agent duly authorized in writing, within 30 days of issuance. ***A hearing may be obtained upon the written request of the registered owner***." 75 Pa.C.S.A. § 3116(h)(3); 75 Pa.C.S.A. § 3370(i)(3) (emphasis added).

Upon receiving a notice of violation, a registered owner has two options: admit responsibility and pay the fine or request a hearing to contest liability. The fine for a Red Light Program violation is $100 and the fine for a Speed Camera Program violation ranges from $100 to $150 depending on the speed in excess of the legal limit. 75 Pa.C.S.A. § 3116(d); 75 Pa.C.S.A. § 3370(d); Phila. Code § 12-3406.[3] Payment of the fine "operate[s] as a final disposition of the case." 75 Pa.C.S.A. § 3116(1)(3); 75 Pa.C.S.A. § 3370(m)(3).

Rather than admit responsibility and pay the fine, a registered owner can instead request a hearing to contest liability. 75 Pa.C.S.A. § 3116(m)(1); 75 Pa.C.S.A. § 3370(n)(1). Both statutes outline evidentiary rules that apply at such hearings. Both statutes provide that "[a] certificate . . . based upon inspection of recorded images produced by an automated . . . enforcement system and sworn to or affirmed by a police officer . . . shall be prima facie evidence of the facts contained in it[,]" provided there is written documentation that the automated red light or speed camera system is operating correctly when the alleged violation occurred. 75 Pa.C.S.A. § 3116(c); 75 Pa.C.S.A. § 3370(c). A photo depicting the violation "shall be admissible in any

---

[3] Section 3370(d) sets the upper limit of a fine for a violation at $150, and permits a lesser amount to be set by ordinance. Section 12-3406 of the Traffic Code imposes a $100 fine for speeding in excess of the limit by 11 mph to 20 mph, a $125 fine for speeding in excess of the limit by 20 mph to 30 mph, and a $150 fine for speeding in excess of the limit by 30 mph or more.

judicial or administrative proceeding to adjudicate the liability for the violation." 75 Pa.C.S.A. § 3116(c); 75 Pa.C.S.A. § 3370(c).

Both statutes impose liability on the registered owner "unless the owner . . . has a defense" under Section 3116(f) or Section 3370(g).  75 Pa.C.S.A. § 3116(b); 75 Pa.C.S.A. § 3370(b).  Those defenses include: (1) the owner was not driving at the time of the violation; (2) the vehicle had been reported stolen and had not been recovered at the time of the violation; and (3) the person receiving the notice of violation was not the owner of the vehicle at the time of the violation. 75 Pa.C.S.A. § 3116(f); 75 Pa.C.S.A. § 3370(g).[4]  The registered owner can present evidence relating to any defense they may have.  See 75 Pa.C.S.A. § 3116(m); 75 Pa.C.S.A. § 3370(n).

If the owner is unsatisfied with the hearing officer's decision, he or she can further appeal that decision in court. 75 Pa.C.S.A. § 3116(m)(2); 75 Pa.C.S.A. § 3370(n)(3).

**B.      Plaintiffs' Allegations**

The specific allegations relating to individual Plaintiffs Joseph Jung, Robert Thomas,[5] Daniel Smith, Alexander Simpson, Paul Kelly, Kyle Williams, and Tiphanie Lawton are minimal.  Most of the named Plaintiffs paid fines after receiving a Red Light Notice (Lawton), Speed Camera Notice (Jung), or multiple notices (Simpson, Smith, Williams). See Dkt. No. 1 ("Compl."), ¶¶82-94.  Among those plaintiffs, only Lawton and Williams allege that they were not driving at the time of the violation.  Id. ¶¶87, 91.  Plaintiffs further allege that Lawton and Williams would not have paid the fines if they knew they had an affirmative defense.  Id.

---

[4] Section 3370(g)(4) further provides a defense where the automated Speed Camera system fails to comply with Section 3368 with respect to testing for accuracy, certification, or calibration.

[5] Outside of the allegations relating to his residence, there are no specific allegations pertaining to Plaintiff Thomas.

The only named plaintiff who availed themselves to the right to challenge the violation was Paul Kelly. Id. ¶78. Kelly received a Speed Camera Notice, pled not guilty, and contested his citation through a hearing. Id. ¶¶78-80. Plaintiffs allege that Kelly provided screenshots from his State Farm phone application which purported to track his driving habits and speed at the time of the violation, but was nevertheless found liable and had to pay the fine. Id. ¶¶78-81. There is no allegation that Kelly further appealed this decision.

Plaintiffs otherwise allege that both the Speed Camera and Red Light Notice are deficient in several ways. Id. ¶59. They claim both notices do not attach the vehicle registration number, which, according to Plaintiffs is key to identifying the name and address of the registrant and/or the name of the owner. Id. ¶60. They also claim that the Speed Camera Notice does not include documentation that the automated speed enforcement system is operating correctly at the time of the violation, which they allege is required by Section 3370(c). Id. ¶67.

Plaintiffs further contend that the notices are "false" and "misleading" because they state that "[a]s the registered owner of the vehicle, you are liable to pay a fine of $100" for the violation, but do not advise owners that they may have a defense. Id. ¶¶65, 66, 68-73.

## ARGUMENT

### A. Standard of Review

The "plausibility" pleading standard derived from Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007), as summarized in The Choice is Yours, Inc. v. The Choice is Yours, No. 14-01804, 2015 WL 5584302, *2-3 (E.D. Pa. Sept. 22, 2015), need not be belabored here.

**B.** **Plaintiffs' Procedural Due Process Claims Fail as a Matter of Law Because the Rebuttable Presumption of Owner Liability is Appropriate in the Context of a Civil Traffic Fine and the Laws Provide Sufficient Notice and an Opportunity to Challenge Violations**

The gravamen of Plaintiffs' due process claim appears to be rooted in the misguided premise that the Constitution prevents statutes or ordinances regulating *traffic violations* from imposing a *civil* fine on a vehicle's *owner* based on a *rebuttal presumption* that the owner was driving. While Count I of Plaintiffs' Complaint purports to state a *substantive* due process claim, it makes sense to first address Plaintiffs' *procedural* due process claims. In deciding what due process protections are constitutionally required, the threshold inquiry is whether Sections 3370 and 3116 establish a criminal or civil penalty. E.g. Worthy v. City of City of Phenix City, Ala., 930 F.3d 1206, 1217 (11th Cir. 2019); Sevin v. Par. of Jefferson, 621 F. Supp. 372, 378 (E.D. La 2009).

That distinction is of constitutional significance because the Fourteenth Amendment surely "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Francis v. Franklin, 471 U.S. 307, 313 (1985) (internal quotation marks omitted) (quoting In re Winship, 397 U.S. 358, 364 (1970)). Flowing from this principle is a further prohibition on the "State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." Id. (citing Sandstrom v. Montana, 442 U.S. 510, 520-24, 99 S.Ct. 2450 (1979)).

However Plaintiffs' frame their due process claim stemming from the alleged "mandatory rebuttable presumption," these prohibitions do not apply here. As the Commonwealth Court concluded in Heinz, the Speed Camera Program imposes *civil* rather than criminal penalties and

thus provides constitutionally adequate process. 316 A.2d at 1067-73.[6] Other jurisdictions have

reached the same conclusion analyzing similar red light or speed camera statutes and ordinances.

E.g. Worthy, 930 F.3d at 1217 (finding penalties imposed under red-light-camera ordinance were

civil); Bevis v. City of New Orleans, No. 10-4161, 2011 WL 2899120, at *3 (E.D. La. July 18,

2011), aff'd, 686 F.3d 277 (5th Cir. 2012) ("[S]everal federal district courts evaluating

automated traffic enforcement ordinances nearly identical to that at issue here have consistently

found such to be civil in nature based on a similar analysis of the above factors.").

Putting aside any question implicated by the rebuttal presumption of owner liability, it is

beyond cavil that the Programs provide constitutionally adequate procedural protections. "The

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and

in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893 (1976) (quoting

Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).[7] Courts typically weigh three factors to assess

the constitutional adequacy of state procedures: (1) the private interest at stake; (2) the risk of an

erroneous deprivation and the probative value of additional procedural safeguards; and (3) the

government's interest and the burdens that additional procedural safeguards would place upon

the government. Id. at 335.

---

[6] This conclusion renders Sandstrom v. Montana, a case on which Plaintiffs' premise one of their due process claims, inapplicable. As the Oregon Supreme Court recognized, "Sandstrom involved a crime, not a violation" and the requirement that the State prove each element of a crime beyond a reasonable doubt "does not extend to civil action." State v. Dahl, 87 P.3d 650, 654-56 (Or. 2004) (en banc).

[7] As noted in Plaintiffs' Complaint the same analysis applies to their due process claims brought under the Fourteenth Amendment and the Pennsylvania Constitution. Compl. ¶184. Courts have recognized that "[t]he due process requirements of the Pennsylvania Constitution are indistinguishable from the Fourteenth Amendment and, therefore, the same analysis applies to both provisions." Turk v. Com., Dep't of Transp., 983 A.2d 805, 818 (Pa. Cmwlth. 2009) (citing Pa. Game Comm'n v. Marich, 666 A.2d 253 (Pa. 1995)); see also Anderson v. City of Phila., 845 F. 2d 1216, 1219 n.2 (3d Cir. 1988) (explaining due process claim under Pennsylvania Constitution "may be considered equivalent to the federal constitutional claims in this case, since the relevant section of the Pennsylvania Constitution, Art. I § 1, has been interpreted by the Pennsylvania Supreme Court as providing the same guarantees as the [F]ourteenth [A]mendment of the United States Constitution").

Here, as reviewed in Heinz in the context of the Speed Camera Program, both laws provide ample notice and an opportunity to be heard. Specifically, each statute requires that a notice of violation be mailed to the vehicle's owner within 30 days. 75 Pa.C.S.A. § 3116(j); 75 Pa.C.S.A. § 3370(k). The vehicle owner has the right to request a hearing, where they can present a defense to challenge the notice of violation. 75 Pa.C.S.A. § 3116(f), (m); 75 Pa.C.S.A. § 3370(g), (n). If the hearing officer sustains the violation, the vehicle owner can appeal that decision to court. 75 Pa.C.S.A. § 3116(m); 75 Pa.C.S.A. § 3370(n). As the Commonwealth Court of Pennsylvania properly concluded, these provisions satisfy the fundamental requirements of due process.

Applying the test set forth in Mathews, courts have upheld red light and speed camera ordinances and statutes against procedural due process claims like the ones at issue here. E.g. Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 150 (4th Cir. 2014) (finding speed camera statute satisfied due process because "[n]otice sent by first-class mail was reasonably calculated to provide actual notice of the speeding violation and civil penalties" and the plaintiffs could be heard in court "on any objections prior to imposition of the statutory penalties"); Bevis v. City of New Orleans, 686 F.3d 277, 279-80 (5th Cir. 2012) (finding due process satisfied where the plaintiffs received notice of alleged violations and had the opportunity challenge the violation and present affirmative defenses at administrative hearing); Mendenhall v. City of Akron, 374 Fed.Appx. 598, 600 (6th Cir. 2010) (finding speed camera ordinance satisfied due process where it "provides for notice of the citation, an opportunity for a hearing, provision for a record of the hearing decision, and the right to appeal an adverse decision" notwithstanding fact that "impose[s] civil penalties for speeding violations irrespective of whether the owner was, in fact, driving the vehicle when the violation was recorded").

To the extent Plaintiffs claim they were deprived of due process because the PPA Defendants somehow misled them into paying fines or failed to follow the statutory notice requirements, the Third Circuit has rejected a procedural due process claim based on similar allegations.  In Ke v. Philadelphia Parking Authority, 831 Fed.Appx. 621 (3d Cir. 2020), the plaintiff alleged that PPA violated his due process rights by not only booting his car for delinquent parking tickets which he had ***never previously received***, but also by ***tricking him*** into paying the outstanding fines by falsely telling him that was the only way to retrieve the car, rather than advising him of his right to a hearing.  The Third Circuit affirmed the district court's dismissal, noting that the plaintiff "received all the notice and process he was due" since, under the applicable Traffic Code provisions, "he had the opportunity to contest the fine and underlying tickets in a post-deprivation hearing but he chose not to."  831 Fed.Appx. at 622-23. The Third Circuit clarified that dismissal was appropriate "despite [the plaintiff's] allegations that PPA employees misled him and failed to comply with their procedures."  Id. at 623, n.4.

In the later regard, the Third Circuit cited Tate v. District of Columbia, 627 F.3d 904 (D.C. Cir. 2010), cert. denied, 563 U.S. 980, 131 S.Ct. 2886 (2011) in which the plaintiff alleged that after her vehicle was impounded for delinquent parking tickets, District of Columbia officials told her she had until June 7, 2002 to reclaim the vehicle.  The plaintiff claimed that when she attempted to recover the vehicle on that date, she learned it had been sold at a public auction three days prior on June 4, 2002.  The D.C. Circuit found that these allegations, even if true, could not establish a valid due process claim:

> ***That the District may have misstated the auction date or violated its own statutory notice requirement*** does not mean that it deprived Tate of the process due under the Fifth Amendment. "[T]he fact of a state law violation does not resolve whether a plaintiff has been deprived of due process." . . . "The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in

a meaningful manner." . . . Tate had meaningful notice of her infractions and a series of hearings to contest them, culminating in the hearing on May 29, 2002, which she requested for the specific purpose of challenging the sale of her vehicle at auction. ***If the District subsequently sold it prematurely, that fact may well give rise to a common law tort under D.C. law but it did not deprive her of the only process due*** — namely, timely notice and a hearing. Tate does not challenge the adequacy of the administrative hearings themselves.

627 F.3d at 908 (emphasis added) (citations omitted) (first quoting Barwood, Inc. v. District of Columbia, 202 F.3d 290, 294 (D.C. Cir. 2000); then quoting Mathews, 424 U.S. at 333).

There is no dispute that Plaintiffs each received a notice of violation for either their Red Light or Speed Camera violations. Plaintiffs had the ability to contest their violations by requesting a hearing and presenting evidence regarding one of the enumerated defenses. And as made evident by the Reminder Notice of Violation attached to Plaintiffs' Complaint, violators ***are advised of their right to dispute the violation***. Dkt. No. 1-5, at 1 ("You must either, admit liability and pay the fine in full, OR request in writing a hearing to dispute this violation."). Plaintiffs' due process claim based on the allegation that they were misled into paying should therefore be dismissed.

Plaintiffs' claim that PPA issued deficient notices, even if true, does not give rise to a procedural due process claim either. An alleged violation of a state statute, standing alone, is not cognizable under Section 1983. Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992); see also Shoemaker v. City of Howell, 795 F.3d 553 (6th Cir. 2015) (holding that "[a]lthough the City failed to fully comply with its own Ordinance, such a failure 'does not ... automatically translate into a deprivation of procedural due process under the United States Constitution'"); Woodard v. Andrus, 419 F.3d 348, 353 (5th. Cir. 2005) ("[A] violation of a state statute alone is not cognizable under [Section] 1983 because [Section] 1983 is only a remedy for violations of federal statutory and constitutional rights.").

It bears noting that Plaintiffs' claims that the violation notices fail to comply with statutory requirements are overstated if not demonstrably false.  For example, Plaintiffs aver that the Speed Camera Program violation notices lack written documentation that the automated system was operating correctly at the time of the violation. Compl. ¶¶ 67, 175.  But Section 3370 ***does not require the notice to include this information***.  75 Pa.C.S.A. § 3370(i).[8]  Instead, and as required by the City's Speed Camera Program ordinance, the notice "must be authenticated by a City police officer who swears or affirms that he or she has inspected the recorded images evidencing the violation and the information set forth in the notice of violation and that he or she has reason to believe the information contained in the notice of violation is true and correct." Phila. Code § 12-3405(3).  As evidenced by the ***Reminder*** Notice attached to Plaintiffs' Complaint, PPA includes that required affirmation.  Dkt. No. 1-5.  That Reminder Notice also makes clear that PPA includes vehicle registration information in the ***original*** Notice of Violation (a copy of which Plaintiffs do ***not*** attach).  Specifically, the original Notice includes a picture of the vehicle's license plate number and state of issuance, as required by the statute.

At bottom, Plaintiffs do not tie any of their alleged deficiencies into a violation of their procedural due process rights.  Nor could they.  Plaintiffs received sufficient notice of their

---

[8] Section 12-3409(4) of the Traffic Code makes clear that the written documentation called for in Section 3370(c) is to be provided at the hearing as a means of proving the violation.  In relevant part, that section provides:

> (4) At a hearing pursuant to this Chapter, no evidence of violation need be submitted other than the following, which shall be admissible in such hearing:
>
>> (a) the notice of violation, including the recorded image evidencing the violation, which shall be prima facie evidence of the facts contained in it, provided that: (i) it contains the required authentication of the City police officer; and that (ii) written documentation is provided that the automated speed enforcement system was operating correctly at the time of the alleged violation and has been tested for accuracy at regular intervals as designated by the Department of Transportation.

Phila. Code § 12-3409(4)(a).

violations and had the right to contest liability at a hearing. Nothing stopped Plaintiffs from turning to the applicable statute to determine the grounds on which they could contest liability. Cf. City of West Covina v. Perkins, 525 U.S. 234, 240, 119 S.Ct. 678 (1999) ("Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options."). This Court should therefore dismiss Plaintiffs' procedural due process claims.

> **C. Plaintiffs' Substantive Due Process Claim Fail as a Matter of Law Because the Programs, Including the Rebuttable Presumption of Owner Liability, Are Rationally Related to Pennsylvania's Legitimate Interest in Public Safety**

Plaintiffs contend that both Programs are *facially* unconstitutional and violate their substantive due process ("SDP") rights under the Fifth and Fourteenth Amendments because they purport to create a "mandatory rebuttable presumption" of liability against the vehicle owner. It warrants note that a facial attack on a statute "is the 'most difficult challenge to mount successfully.'" United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011), cert. denied, 565 U.S. 1275, 132, S.Ct. 1741 (2012) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "A party asserting a facial challenge 'must establish that no set of circumstances exist under which the [statute] would be valid." Id. Put differently, Plaintiffs must show that Sections 3116 and 3370 are "unconstitutional in all of [their] applications." Id. (internal quotation marks omitted) (quoting Wash. State Grange v. Wash. State Republic, 552 U.S. 442, 449 (2008)).

"Substantive due process is a 'component of the [Fourteenth Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" Nekrilov v. City of Jersey City, 45 F.4th 662, 680 (3d Cir. 2022) (alteration in original) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Where, as here, a plaintiff challenges the validity of a legislative act, that "act will withstand [a] substantive due process challenge if the government 'identifies a legitimate state interest that the

legislature could rationally conclude was served by the statute,' although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny." <u>Nicholas v. Pennsylvania State University</u>, 227 F.3d 113, 139 (3d Cir. 2000) (quoting <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1403 (3d Cir. 1997)).

In <u>Heinz</u>, the Commonwealth Court expressly rejected a SDP challenge to the Speed Camera Program. Even applying the "more restrictive" analysis applicable to SDP claims under Pennsylvania state law, the Court concluded that the law has a "real and substantial relation to the public interests it seeks to advance":

> Section 3370's legitimate public interest is to deter speeding on the designated highway. In the furtherance of such purpose, it requires that the City post two conspicuous warning signs notifying the public that an automated speed enforcement device is in use . . . Additionally, Section 3370's fine could have a deterrent effect. <u>See Worthy</u>, 930 F.3d at 121 (concluding that "a $100.00 civil penalty is certainly rationally related to that alternative purpose, as the reasonable fine could deter motorists from running red lights, thereby reducing accidents and promoting public safety"). Further, this Court concludes that a $100.00 or $150.00 fine with no further penalty or criminal liability, and no impact on an individual's driving or insurance records, is not oppressive.

<u>Id.</u> at 1075-76 (citations and footnote omitted).

Given the similarities between the two Programs, this analysis applies equally to the Red Light Program. Indeed, courts have consistently found that similar red light and/or speed camera laws in other jurisdictions pass constitutional muster, particularly where no fundamental right is implicated.[9] <u>E.g.</u> <u>Idris v. City of Chicago, Ill.</u>, 552 F.3d 564 (8th Cir. 2009) (rejecting substantive due process challenge to ordinance's imposition of vicarious liability on vehicle's owner even if they were not driving); <u>Ware v. Lafayette City-Par. Consol. Gov't</u>, No. 08-0218, 2009 WL

---

[9] It warrants note that challenges to a red light or speed camera law's "rebuttable presumption" or "vicarious liability" scheme vary in their framing; sometimes they are cast as procedural due process challenges and other times they are cast as substantive due process claims.

5876275, at *8-9 (W.D. La. Jan. 6, 2009) (finding speed camera and red light ordinances that created rebuttable presumption that the photographed vehicle's registered owner is the violator did not violate due process because it is rational to presume the driver is the registered owner and the ordinances "do not deny a vehicle owner a reasonable opportunity to present evidence to the contrary"); Agomo v. Fenty, 916 A.2d 181, 193 (D.C. Cir. 2007) (holding that statutory presumption of liability for owner of vehicle unless owner furnished evidence that vehicle was in the custody, care, or control of another person did not violate due process).

The Eighth Circuit's decision in Idris illustrates the deficiency in Plaintiffs' claim. There, the City of Chicago installed cameras to enforce red light and illegal turn violations. Id. at 565. The Chicago ordinance imposed liability on the owner (or lessee) regardless of who was driving, and only allowed recipients of the citation to defend by showing that the car or plates had been stolen or the car had been sold. Id. It bears noting that, unlike here, Chicago vehicle owners could **not** defend and escape liability by showing that someone else was driving. Id.

The Idris plaintiffs – a group of owners who alleged they were fined even though someone else was driving – attacked the ordinance's liability scheme on SDP grounds. In rejecting this claim, the Eighth Circuit first found the challenged ordinance was subject to rational basis review. See id. at 566. It reasoned that "no one has a fundamental right to run a red light or avoid being seen by a camera on a public street" and that a fine "so modest" as $90 has never been recognized by the Supreme Court as a fundamental right. Id. Applying rational basis review, the court found that it was rational to fine an owner rather than a driver because "[a] camera can show reliably which cars and trucks go through red lights but is less likely to show who was driving" and such a system "reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected." Id. The Eighth Circuit further noted that

"[l]egal systems often achieve deterrence by imposing fines or penalties without fault." Id. (citing trio of Supreme Court cases involving similar schemes in other contexts and holding each was constitutional).

Viewed through this lens, it is rational to impose liability for a small civil fine on the vehicle's registered owner. Indeed, the Supreme Court has long recognized that "[l]egislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government." Mobile, Jackson & Kansas City R. Co. v. Turnipseed, 219 U.S. 35, 42, 31 S.Ct. 136 (1910). "If a legislative provision not unreasonable in itself, prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him." Id. at 43.

The statutes and ordinances at issue do just that. Both presumptively impose liability on the vehicle's owner but afford the owner the opportunity to contest that presumption through statutory affirmative defenses. Neither runs afoul of the Fifth Amendment or the Fourteenth Amendment. The Court should dismiss Plaintiffs' substantive due process claim with prejudice as a matter of law.

> **D.** **Plaintiffs' Conspiracy Claim Against the Individual PPA Defendants Fails Because There is No Underlying Constitutional Violation and Plaintiffs Otherwise Fail to Sufficiently Allege Any Conspiracy**

Plaintiffs' final claim is that "[o]ne or more of the Defendants" and "[o]ne o[r] more of the Individuals Defendants . . . participated in a conspiracy to draft deficient and misleading Notices directed to Plaintiffs and those similarly situated." Compl. ¶¶186, 187.

To state a claim for conspiracy under Section 1983, Plaintiffs must allege "that persons acting under color of state law reached an understanding to deprive him of his constitutional

rights . . . [which] requires that the state actors took 'concerted action' based on an 'agreement' to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (internal citation omitted) (quoting Jutrowski v. Township of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018)). "[A] bare assertion of conspiracy will not suffice." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007). Instead, a plaintiff must allege in specific terms "the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010) (quoting Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989), abrogated on other grounds, Beck v. Prupis, 529 U.S. 494, 120 S.Ct. 1608 (2000)).

Plaintiffs' conspiracy claim fails for two independent reasons. First, and for all of the reasons set forth above, Plaintiffs have failed to state any actionable underlying constitutional violation. Second, Plaintiffs fail to plausibly allege a conspiracy. The only allegations relating to the Individual Defendants are those specifying what each's job title is and the conclusory allegations, made only upon information and belief, that unspecified Individual Defendants "worked together" to implement and enforce the Speed Camera Program and Red Light Program and "worked together" on the notices for each program. Compl. ¶¶96-106. These allegations are palpably insufficient to support even an inference that a conspiracy existed. The Court should therefore dismiss Count V.

### E. Plaintiff Has Failed to State Any Valid Constitutional Claim Against the Individual PPA Defendants in Their Respective Individual Capacities

Even if Plaintiffs had a valid Section 1983 claim against PPA, their claims against the *Individual* PPA Defendants should be dismissed.

1. <u>Plaintiffs Fail to Allege That the Individual PPA Defendants Were Personally Involved in Any Alleged Constitutional Violation</u>

A "defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . and cannot be held responsible for a constitutional violation which he or she neither participate in nor approved." <u>Baraka v. McGreevey</u>, 481 F.3d 187, 210 (3d Cir. 2007); <u>see</u> <u>Sykes v. Carroll</u>, 477 Fed.Appx. 861, 863 (3d Cir. 2012) (affirming grant of summary judgment in favor of an individual defendant where plaintiff failed to allege personal involvement). As the Third Circuit explained in <u>Rode v. Dellarciprete</u>, "personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." 845 F.2d 1195, 1207-08 (3d Cir. 1988). Liability must "be based on [a supervisor's] own acts or omissions, not those of [other] individual officers." <u>Argesta v. City of Philadelphia</u>, 801 F. Supp. 1464, 1468 (E.D. Pa. 1992), <u>aff'd</u>, 933 F.2d 223 (3d Cir. 1993).

As noted above, Plaintiffs' Complaint contains virtually nothing which explains the presence of the Individual PPA Defendants in this suit. Stripped of its conclusory allegations, the Complaint is devoid of specific allegations of how any of the Individual PPA Defendants were personally involved in the creation of either the Red Light Program or the Speed Camera Program, the creation of any of the notices issued to Plaintiffs, or any other matter relevant to Plaintiffs' claims.

2. <u>The Individual PPA Defendants Are Entitled to Qualified Immunity</u>

Putting aside Plaintiffs' failure to plead specific facts regarding the Individual PPA Defendants, those defendants are nevertheless entitled to qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248, 253 (3d Cir. 2010) (internal

quotations omitted).  Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  <u>Spady v. Bethlehem Area Sch. Dist.</u>, 800 F. 3d 633, 637 (3d Cir. 2015) (internal quotations omitted).  Put another way, government officials are not liable under Section 1983 "as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated."  <u>Kedra v. Shroeter</u>, 876 F.3d 424, 434 (3d Cir 2017). The court is to ask whether the facts alleged show a violation of a constitutional right that was clearly established at the time of the violation.  <u>Id.</u>  A right is clearly established if there is controlling authority in the jurisdiction or a robust "consensus of cases of persuasive authority." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011).  "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." <u>Reichle v. Howards</u>, 566 U.S. 658, 664, 132 S.Ct. 2088 (2012) (citations omitted).

Here, there is no basis to conclude that any of the Individual PPA Defendants knowingly violated any clearly established constitutional right.  Nor is there any controlling case law, and certainly no "robust consensus" of persuasive authority, that would have put anyone at PPA on notice that the Red Light Program or Speed Camera Program would violate any owners' due process rights.

To the extent the Court finds Plaintiffs have sufficiently alleged constitutional claims, the Court should nevertheless dismiss these claims against the Individual PPA Defendants.

## CONCLUSION

For these reasons, the PPA Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Complaint with prejudice because any further amendment would be futile. See Blake v. JPMorgan Chase Bank, N.A., 259 F. Supp. 3d 249, 253-54 (E.D. Pa. 2017) ("A proposed amendment is futile 'if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.'" (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988))).

Respectfully submitted,

**OF COUNSEL**:                          /s/ Patrick J. Doran
Archer & Greiner, P.C.                   Patrick J. Doran
Three Logan Square                       Amy E. Pearl
1717 Arch Street                           *Attorneys for the PPA Defendants*
Suite 3500
Philadelphia, PA 19103
215-963-3300
Fax:  215-963-9999
pdoran@archerlaw.com
apearl@archerlaw.com

230367438 v4

20