IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH JUNG, ROBERT THOMAS, DANIEL SMITH, ALEXANDER SIMPSON, PAUL KELLY, KYLE WILLIAMS, TIPHANIE LAWTON | : : : : : | CIVIL ACTION |
| v. | : : | NO. 25-956 |
| CITY OF PHILADELPHIA, PHILADELPHIA PARKING AUTHORITY, CHERELLE PARKER, LYNETTE M. BROWN-SOW, PATRICIA M. FURLONG, BETH C. GROSSMAN, ALFRED W. TAUBENBERGER, OBRA S. KERNODLE, IV, MARK C. NICASTRE, RICHARD LAZER, GABE ROBERTS, CORINNE, O'CONNOR, KEOLA HARRINGTON, ANTHONY KUCZYNSKI, CASEY WECH | : : : : : : : : : : : : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                          June 30, 2025

      Vehicle owners today challenge the way the City of Philadelphia and its Parking Authority impose fines upon them when video cameras capture their vehicles either speeding or running red lights. The vehicle owners first claim Pennsylvania's traffic camera laws are facially unconstitutional in applying a rebuttable presumption (but they do not sue the Commonwealth allowing it an opportunity to be heard). Then the vehicle owners claim the way the City and its Parking Authority enforce the law through a violation notice violates their substantive and procedural due process protections under both the United States and Pennsylvania Constitutions.

      We disagree. Even assuming the vehicle owners afforded the Commonwealth notice of this case so it could defend the facial constitutionality of its law, the vehicle owners do not state a *facial legislative* substantive due process challenge (challenging the language in Pennsylvania statutes

creating a rebuttable presumption the owner of the vehicle is liable for the traffic violation caught on camera). Constitutional protections against presumptions are applicable only in the criminal context and the rebuttable presumption of vehicle owner liability in the automated enforcement statutes is rationally related to the goal of traffic enforcement.

The vehicle owners also do not state an *executive action* substantive due process challenge (challenging the language in the violation notices) against the City and Parking Authority because executive action substantive due process protections apply only to certain fundamental rights and paying money for a traffic fine is not one of them. The vehicle owners do not state an *executive action* procedural due process challenge (challenging the language in the violation notices) because the City and Parking Authority provide notice and an opportunity to be heard through a fulsome appeals process and the Constitution does not require anything more.

The vehicle owners did not, and cannot as a matter of law, plead the automated red light camera and speed camera programs in Philadelphia violate their procedural or substantive due process rights. They have not pleaded a conspiracy nor have they offered grounds for a declaratory judgment or liability arising from the Mayor's and Parking Authority's agents for personal involvement in allegedly unconstitutional conduct.

We dismiss the vehicle owners' civil rights claims with prejudice because a third try to plead these claims would be futile after vehicle owners earlier amended to address these concerns and they could not do so.

## I. Alleged facts

Citizens expect the City of Philadelphia through its undisputed police powers to enforce traffic laws within the City to protect public safety.[1] The City created the Philadelphia Parking Authority which, among its many responsibilities, administers Philadelphia's traffic camera programs monitoring drivers' compliance with red lights and speed limits.[2]

### *Philadelphia's automated programs leading to fines for running red lights and speeding.*

Video cameras on certain high traffic roads allow the City to monitor and cite traffic violators absent a police officer witness. The Pennsylvania General Assembly created the Automated Red Light Camera Program in 2002.[3] The City and its Parking Authority together issue hundreds of thousands of citations through the Automated Red Light Camera Program each year.[4] The Pennsylvania General Assembly created the Automated Speed Camera Program sixteen years later.[5] The Philadelphia Parking Authority and the City of Philadelphia issue hundreds of thousands of citations through the Automated Speed Camera Program each year.[6]

The cameras used in both the Automated Red Light Camera Program and the Automated Speed Camera Program (together, the Automated Enforcement Programs), "only capture images of the vehicle from a rear view."[7] The cameras "do not capture any images of the driver or provide any other evidence of the driver's identity."[8]

The City and Parking Authority must mail notices of violations within thirty days of the alleged violation.[9] Both the speeding notices and red light notices contain the language "[a]s the registered owner of the vehicle, you are liable to pay a fine[.]"[10] Vehicle owners can request a hearing with the City's Office of Administrative Review.[11] Notices contain information on how a vehicle owner can request a hearing.[12] The Office of Administrative Review "routinely and systematically finds recipients liable even where they offer proof that they did not commit the alleged violation."[13]

*Six Philadelphia car owners before us paid the fines detailed on the Notices of Violations.*

The City and Parking Authority, under the statute's requirements, mailed an Automated Speed Camera Program violation notice to Joseph Jung in March 2023.[14] "Mr. Jung paid a fine in the amount of $104.00 on March 21, 2023."[15]

The City and Parking Authority mailed an Automated Speed Camera Program violation notice to Paul Kelly in April 2023.[16] They "cited Mr. Kelly for driving 58 miles per hour in a 45-mile-per-hour zone when traveling northbound on Roosevelt Boulevard."[17] Mr. Kelly "attended a hearing to contest the citation."[18] "Despite providing screenshots from his State Farm insurance phone application, which tracked the precise driving habits and speed of Mr. Kelly's vehicle at the time of the alleged violation, Mr. Kelly was found liable and had to pay the fine."[19]

"Alexander Simpson has received several Speeding Notices and Red Light Notices."[20] "Mr. Simpson has paid the fine each time he received a violation."[21]

"Daniel Smith has similarly received multiple Speeding Notices issued by [the Philadelphia Parking Authority], paying each violation as instructed by the Notice."[22]

"Tiphanie Lawton received a Red Light Notice, despite not driving her vehicle at the time of the violation."[23] Ms. Lawton paid the fine because she believed she was legally required to "because the Red Light Notice stated that she was liable."[24]

"Kyle Williams received multiple Red Light Notices . . . despite not driving his vehicle at the time of the violations."[25] Mr. Williams paid the fine because he believed he was legally required to "because the Red Light Notice stated that he was liable."[26]

## II.   Analysis

Vehicle owners Jung, Thomas, Smith, Simpson, Kelly, Williams, and Lawton allege the City and Mayor Parker along with the Parking Authority and its directors and officers use the red light and speeding camera automated systems in a way that violates their due process rights.[27]

4

Vehicle Owners seek declaratory relief, injunctive relief, disgorgement, money damages, and attorney's fees.[28]

The Vehicle Owners first claim the Pennsylvania General Assembly's inclusion in the Automated Enforcement statutes of a mandatory rebuttable presumption of a red light or speeding violation based on the camera recording the conduct facially violates their substantive due process rights.[29] The Vehicle Owners then turn back to Philadelphia's enforcement of the Automated Enforcement statutes arguing the City and Parking Authority's violation notices contain misleading information and do not contain statutorily required information, which violates the Vehicle Owners' substantive and procedural due process rights; all of the above also violates the due process clause of the Pennsylvania Constitution; and the City and Parking Authority (including their directors and officers) conspired to draft deficient and misleading violation notices.[30]

The City and Parking Authority now move to dismiss arguing the Automated Enforcement statutes are civil statutes, and constitutional criminal protections against presumptions do not apply; the Vehicle Owners do not plead a substantive due process claim because the programs do not deprive vehicle owners of a fundamental right; the Vehicle Owners do not plead a procedural due process claim because the programs provide adequate notice and an opportunity to be heard; the conspiracy claim fails in the absence of any underlying constitutional violation; and the Vehicle Owners do not plead the personal involvement of the Mayor and other individuals necessary to impose civil rights liability.[31]

Vehicle Owners respond arguing constitutional criminal protections against rebuttable presumptions apply in this context; the violation notices shock the conscience in violation of substantive due process protections; they pleaded a procedural due process claim because the violation notices do not provide vehicle owners with the relevant language from all applicable

statutes; the Office of Administrative Review rarely finds the City or Parking Authority erred in issuing an Automated Violation Notice and it costs too much to appeal incorrect tickets; and they adequately pleaded personal involvement for the Mayor and Parking Authority directors and officers.[32] They do not defend their conspiracy claim against Defendants' arguments and therefore concede they do not allege a conspiracy.

We find Vehicle Owners do not plead a facial substantive due process challenge to the rebuttable presumptions of owner liability in the Automated Enforcement statutes because constitutional protections against presumptions are applicable only in the criminal context and the rebuttable presumption of vehicle owner liability in the statutes is rationally related to the General Assembly's goal of traffic safety. Vehicle Owners do not plead an executive action substantive due process challenge to violation notices issued by the City and Parking Authority because executive action substantive due process protections apply only to certain fundamental rights and money paid for fines is not one of them. Vehicle Owners do not plead an executive action procedural due process challenge to violation notices issued by the City and Parking Authority because the notices provide notice and an opportunity to be heard and the associated Automated Enforcement statutes provide a fulsome appeals process. Vehicle Owners have not pleaded a constitutional violation. They have not pleaded a conspiracy. We decline to issue a declaratory judgment. Vehicle Owners fail to state a claim as a matter of law and we dismiss the Amended Complaint with prejudice.

> **A.    The Pennsylvania General Assembly created red light camera and speed camera enforcement schemes for the City of Philadelphia.**

The Pennsylvania General Assembly created two automated schemes to enforce red light and speed limit laws in Philadelphia: the Automated Red Light Enforcement statute and the Automated Speed Enforcement statute.

The General Assembly in the Automated Red Light Enforcement statute dictates "[f]or each violation pursuant to this section, the owner of the vehicle shall be liable for the penalty imposed unless the owner is convicted of the same violation under another section of this title or has a defense under subsection (f)."[33] The General Assembly includes the following defense, among others, in subsection (f): "(1)  It shall be a defense to a violation under this section that the person named in the notice of the violation was not operating the vehicle at the time of the violation[.]"[34] The General Assembly further provides "[a] certificate . . . based upon inspection of recorded images produced by an automated red light enforcement system and sworn to or affirmed by a police officer employed by the city of the first class shall be prima facie evidence of the facts contained in it. The city must include written documentation that the automated red light enforcement system was operating correctly at the time of the alleged violation."[35] This certification does not need to be attached to the violation notice. The General Assembly only requires "[t]he notice of violation shall have attached to it a copy of the recorded image showing the vehicle; the registration number and state of issuance of the vehicle registration; the date, time and place of the alleged violation; that the violation charged is under section 3112(a)(3); and instructions for return of the notice of violation."[36]

The penalty for a violation is no more than $100 and the General Assembly confirmed "[a] penalty imposed under this section ***shall not be deemed a criminal conviction*** and shall not be made part of the operating record under section 1535 (relating to schedule of convictions and points) of the individual upon whom the penalty is imposed, nor may the imposition of the penalty be subject to merit rating for insurance purposes."[37] "An owner to whom a notice of violation has been issued may, within 30 days of the mailing of the notice, request a hearing to contest the liability alleged in the notice. . . . Upon receipt of a hearing request, the system administrator shall

in a timely manner schedule the matter before a hearing officer. . . . The hearing shall be informal; the rules of evidence shall not apply; and the decision of the hearing officer shall be final" unless the vehicle owner chooses to appeal to Pennsylvania state court.[38]

The General Assembly in the Automated Speed Enforcement statute mirrors the Automated Red Light Enforcement statute in the above respects. Owners of vehicles are liable for tickets unless they enjoy an enumerated defense.[39] Not driving the vehicle at the time of the violation is a defense.[40] A police officer must review and certify the violation and the city must state in the notice the camera was working properly at the time of the violation.[41] The General Assembly requires "The notice of violation shall have the following attached to it: (i) a copy of the recorded image showing the motor vehicle; (ii) the registration number and state of issuance of the motor vehicle registration; (iii) the date, time and place of the alleged violation; (iv) notice that the violation charged is under section 3362; and (v) instructions for return of the notice of violation, which shall read: This notice shall be returned personally, by mail or by an agent duly authorized in writing, within 30 days of issuance. A hearing may be obtained upon the written request of the owner of the motor vehicle."[42] The penalty for a violation is no more than $150 and is not deemed a criminal conviction or otherwise counted towards "points" on a license.[43] Individuals can request a hearing and appeal adverse decisions.[44]

The City of Philadelphia has adopted ordinances to implement these statutory programs.[45] The City's ordinances largely track the language of the implementing Pennsylvania statues.[46] Per the General Assembly's instruction, the Philadelphia Parking Authority serves as the administrator of the programs.[47]

B.      **The Automated Enforcement Statutes and the City and Parking Authority's issuance of violation notices do not violate procedural or substantive due process protections.[48]**

Vehicle Owners argue: (1) the Automated Enforcement Statutes are facially unconstitutional because they include a mandatory rebuttable presumption against the accused—a *facial legislative* substantive due process challenge; and (2) the City and Parking Authority issued violation notices under the Automated Enforcement Statutes omitting statutorily required information and misleading recipients—an *executive action* substantive due process and procedural due process challenge.

Vehicle Owners' claims are muddy: they do not draw distinctions between their procedural and substantive due process arguments or clearly articulate which of their rights have been allegedly violated. Because the Automated Red Light Enforcement statute and the Automated Speed Enforcement statute are identical in all the challenged respects, we analyze their constitutionality together. We reject each of Vehicle Owners' arguments as a matter of law in turn: Vehicle Owners have not and cannot state a civil rights claim.

1.      **The rebuttable presumptions in the Automated Enforcement Statutes facially do not violate the substantive due process clause because they are civil enactments and the presumption of owner liability is rationally related to the goal of traffic safety.**

Vehicle Owners' first Count of their amended Complaint seeks a remedy based on a theory both Automated Enforcement Statutes are facially unconstitutional because they include a mandatory rebuttable presumption against the accused. The City and Parking Authority counter the constitutional protection against rebuttable presumptions is applied only in the criminal context and this civil statute contains sufficient due process protections. We agree with the City and Parking Authority.

Our analysis proceeds in two steps: first, we conclude the statutes are civil rather than criminal and, second, we apply rational basis review to Vehicle Owners' facial challenge to the rebuttable presumptions contained in the statutes.

### i. The Automated Enforcement Statutes are civil enactments.

"The Fourteenth Amendment of the United States Constitution provides that no State shall deprive any person of life, liberty, or property, without due process of law."[49] The due process protections afforded in a given situation turn, in part, on whether the contemplated penalty is criminal or civil. "'[T]he characterization of this proceeding and the relief given as civil or criminal in nature, for purposes of determining the proper applicability of federal constitutional protections . . . raise[s] 'a question of federal law rather than state law.'"[50]

"The categorization of a particular proceeding as civil or criminal 'is first of all a question of statutory construction.'"[51] "We consider the statute's text and its structure to determine the legislative objective."[52] We must first ask whether the Pennsylvania General Assembly, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."[53] The Pennsylvania General Assembly explicitly stated "[a] penalty imposed under this section shall not be deemed a criminal conviction and shall not be made part of the operating record under section 1535 (relating to schedule of convictions and points) of the individual upon whom the penalty is imposed[.]"[54]

But even in those cases where the legislature "indicated an intention to establish a civil penalty, we [must] inquire[] further whether the statutory scheme [i]s so punitive either in purpose or effect" as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty[.]"[55] The Supreme Court directs us to consider the seven factors detailed in *Kennedy v. Mendoza-Martinez* to make this determination:

(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.[56]

Before we embark on our own statutory analysis under the Supreme Court's direction, we note in *In re Heinz* the Pennsylvania Commonwealth Court considered a constitutional challenge to the Pennsylvania Automated Speed Enforcement statute and ultimately classified the statute as civil.[57] Mr. Heinz identified himself as the registered owner of a motor vehicle.[58] Philadelphia's "automated speed enforcement system (Speed Camera Program) photographed [Mr.] Heinz's vehicle traveling" above the speed limit on Roosevelt Boulevard.[59] The City issued Mr. Heinz a violation notice and an accompanying fine a week later.[60] Mr. Heinz timely appealed from the notice to the Office of Administrative Review and requested a hearing.[61] The Office of Administrative review conducted a telephonic hearing more than a year later.[62] Mr. Heinz argued, among other things, "although characterized as a civil violation, because the fine was a criminal penalty, criminal procedures should apply."[63] The hearing officer concluded Mr. Heinz was liable for the violation the same day.[64] Mr. Heinz appealed to the trial court.[65] The trial court denied his appeal.[66] Mr. Heinz then appealed to the Commonwealth Court.[67]

Mr. Heinz argued on appeal the speed camera statute "imposes a criminal penalty . . . and lacks due process protections necessary for criminal penalties."[68] The Commonwealth Court followed the Supreme Court's guidance in *Kennedy v. Mendoza-Martinez* to determine whether the speed camera statute is criminal or civil.[69] The Commonwealth Court first noted "the Speed Camera Program provides only for monetary fines" and "monetary penalties do not involve an affirmative disability or restraint and they have not historically been regarded as punishment."[70] The court further noted the statute contained no scienter requirement and the General Assembly

"designed [the statute] to deter speeding on the designated highway" and "a "scheme ... designed to deter ... violations ... alone is not sufficient to transform a civil penalty into a criminal sanction."[71] And the court noted, despite exceeding the speed limit being a summary offense, "the civil penalty assessed under the ordinance does not result in a conviction, nor is it reported on a driving record."[72] The court lastly noted the threat of a fine to encourage compliance with traffic laws is rationally related to a non-punitive purpose.[73] The Commonwealth Court concluded the speed camera statute was not a criminal statute and, accordingly, found Mr. "Heinz's claims that his [criminal] rights . . . were violated[,] to the extent he has asserted them to this Court[,] fail."[74]

We find the Commonwealth Court's reasoning compelling, but we must conduct our own analysis. The statutes were not enacted as a criminal punishment, so the Supreme Court instructs we must look to the *Mendoza-Martinez* factors to determine the criminal or civil nature of the statutes.[75]

As to the first *Mendoza-Martinez* factor, the statutes do not involve an affirmative disability or restraint. Violations of the statutes do not count towards points on a violator's license and are not reported to their car insurance.

As to the second *Mendoza-Martinez* factor, modest monetary fines ($100.00–$150.00) have not historically been regarded as a punishment. The Supreme Court has specifically stated "monetary penalties have not 'historically been viewed as punishment.'"[76]

The General Assembly did not include scienter requirements in either statute so the third *Mendoza-Martinez* factor weighs towards a conclusion the statute is civil.[77]

The fourth *Mendoza-Martinez* factor is neutral: the statutes are not intended to promote retribution because the monetary fines are modest and violations do not add points to a license; but the statutes are meant to deter running red lights and speeding.

At first blush the fifth *Mendoza-Martinez* factor, whether the behavior to which it applies is already a crime, leans towards a criminal characterization because violating the speed limit and running red lights are characterized as crimes in other sections of the Pennsylvania Code.[78] But officer-issued tickets for violating the speed limit and running red lights are **convictions**: a violation of the Automated Enforcement Statutes is not, which suggests a civil purpose.

As to the sixth *Mendoza-Martinez* factor, "the Speed Camera Program and the attendant fine have an alternative, non-criminal purpose - to preserve public safety, and the threat of a fine to encourage compliance with the posted speed limits is rationally related to that non-criminal purpose."[79]

Finally, the seventh *Mendoza-Martinez* factor supports our conclusion the statutes at issue are civil, as the modest fines issued under the statutes are small in relation to the goal of promoting public safety and preventing traffic accidents.

Taken together, the *Mendoza-Martinez* factors overwhelmingly confirm the Automated Enforcement Statutes are civil enactments. Our conclusion is bolstered by our colleagues: "several federal district courts evaluating automated traffic enforcement ordinances nearly identical to that at issue here have consistently found such to be civil in nature based on a similar analysis of the above factors."[80]

### ii. The Automated Enforcement Statutes do not facially violate the substantive due process clause.

Having found the Automated Enforcement Statutes are civil enactments, we construe the Vehicle Owners' claim in Count I as a civil, facial substantive due process challenge to the Automated Enforcement Statutes. "A facial challenge attacks 'a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case.'"[81] To succeed,

the Vehicle Owners must "establish that no set of circumstances exists under which [the ordinance] would be valid, or that the [ordinance] lacks any plainly legitimate sweep."[82]

We must first determine the level of scrutiny to apply. We apply rational basis review in facial substantive due process challenges unless the challenged statute "abridges certain fundamental rights and liberty interests."[83] We apply strict scrutiny, in contrast, when the General Assembly enacts a statute abridging fundamental rights and liberty interests.[84]

Determining the level of scrutiny "requires us to identify the alleged due process right at issue carefully and precisely."[85] We are mindful the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."[86]

The Vehicle Owners argue they have a fundamental right to not be subjected to rebuttable presumptions. But this right has never been recognized in the civil context, let alone been found to be a "fundamental right" in the civil context by the Supreme Court. The Supreme Court urges us to exercise restraint in expanding due process protections and we decline the Vehicle Owners' invitation to recognize this novel fundamental right in the civil context. The Vehicle Owners' inability to offer supporting authority to find a fundamental right along with our own research confirms we should not accept the Vehicle Owners' invitation.

"Mandatory presumptions (also known as legal presumptions) require a jury or judge to reach certain conclusions absent rebuttal evidence."[87] "In a criminal case, these are unconstitutional because they shift the burden of proof onto defendants."[88] But the Automated Enforcement Statutes are not criminal statutes. They create a rebuttable presumption a vehicle registered owner is the violator but such civil presumptions do not contravene the constitutional protections of due process.[89] The Supreme Court has recognized presumptions in civil statutes are

14

"constitutionally valid."[90] "[C]ourts have routinely held that burden-shifting may be permissible in certain civil instances."[91] And our colleagues agree "[t]he fact that [Philadelphia] shifts the burden of proof to the defending party after a prima facie violation is found is not a per se violation of the U.S. Constitution."[92]

The right at issue is ***not*** fundamental and thus we review this facial challenge under the rational basis paradigm. Under rational basis review, "'a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute.'"[93] "[R]ational basis review allows legislative choices considerable latitude."[94] A governmental interest "need only be plausible to pass constitutional muster; we do not second-guess legislative choices or inquire into whether the stated motive actually motivated the legislation" and "the rationality requirement [is] largely equivalent to a strong presumption of constitutionality."[95]

The rebuttable presumption the registered owner of a vehicle who is photographed violating traffic laws is liable for cited traffic violation is rationally related to an important government purpose: deterring violations of traffic laws to save lives. This rebuttable presumption is rational because it directly furthers the goal of increasing enforcement of traffic laws intended to protect the public from dangerous driving and makes the Automated Enforcement programs administrable. "A system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected; these benefits can be achieved only if the owner is held responsible."[96] These two statutes do not facially violate federal or state constitutional substantive due process protections.[97]

**2. The Automated Enforcement Program violation notices do not violate the Vehicle Owners' due process rights.**

The Vehicle Owners' remaining claims return to the City and Parking Authority's violation notices sent to them. They allege the Automated Enforcement Program violation notices themselves, as opposed to the constitutionality of the General Assembly's Automated Enforcement Statutes, violate their due process rights because they are misleading and deficient.

**i. The Automated Enforcement Program violation notices do not violate substantive due process rights.**

The Vehicle Owners allege the Automated Enforcement Program violation notices violate their substantive due process rights because they are misleading and deficient. The City and Parking Authority counter the Vehicle Owners do not establish the violation notices violate a fundamental right. We find the Automated Enforcement Program violation notices issued by the City Defendants and Philadelphia Parking Authority Defendants do not violate substantive due process protections because they do not implicate a fundamental right.

Our Court of Appeals has "recognized that 'two very different threads' make up 'the fabric of substantive due process': substantive due process relating to legislative action and substantive due process relating to non-legislative action."[98] The Vehicle Owners' second and third counts in their amended Complaint challenge the misleading and deficient content of violation notices—not the statutes themselves—and therefore the Vehicle Owners are challenging non-legislative, executive action.

"The 'threshold' to establishing a non-legislative substantive due process claim is that a plaintiff 'has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"[99] The protection to be afforded depends on whether the property interest "is 'fundamental' under the United States Constitution."[100] The "[s]ubstantive due process analysis must [therefore] begin with a careful description of the asserted right."[101] The Vehicle Owners bear

the burden of pleading facts which entitle them to relief but they do not identify what fundamental rights the violation notices allegedly infringe upon.[102] For the sake of judicial economy, we assume the Vehicle Owners argue their property interest in the $100.00–$150.00 fines are the fundamental rights they allege have been infringed (as there is obviously no fundamental right to drive recklessly). Amendment would be futile because the City and Parking Authority raised these deficiencies in their Motions to dismiss the original Complaint: the Vehicle Owners amended as of right in response to those Motions to dismiss but did not plead new facts.[103]

Our Court of Appeals has "limited non-legislative substantive due process review to cases involving real property ownership."[104] Our Court of Appeals had rejected interests such as the ability to earn a living, being prevented from winning a city contract, or losing contracts because of defamatory language by a city employee.[105] The minor fines at issue here do not come close to the rights our Court of Appeals has already instructed are not fundamental. "Given this clear precedent, and the fact that [the Vehicle Owners'] claim[s] in this case in no way implicate[] the ownership of land, [their] claim[s] based on substantive due process principles must fail."[106]

### ii. The Automated Enforcement Program violation notices do not violate procedural due process protections.

The Vehicle Owners further argue the violation notices issued under the Automated Enforcement Statutes omit statutorily required information and mislead recipients in violation of procedural due process protections. Defendants argue the violation notices provide notice and an opportunity to be heard. We agree the violation notices provide the Vehicle Owners with a notice of the fine and instructions for initiating the appellate process. The violation notices, when viewed in conjunction with the robust available appellate process, satisfy the requirements of procedural due process.

17

The Fourteenth Amendment "places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."[107] "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard."[108] "Due Process is flexible and calls for such procedural protection as the particular situation demands."[109]

"A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law."[110]

### a. The Vehicle Owners have a property interest in the money they paid as fines.

"In considering a procedural due process claim, the threshold question is whether a plaintiff has identified a protected property interest."[111] Our Court of Appeals has "made clear that the 'property interest' protected by substantive due process claims is qualitatively different than the property interest protected by procedural due process" and "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process[.]"[112] "Money has long been recognized as protected by procedural due process."[113] Our colleagues specifically found individuals have "a property interest in the money [they] paid as [] fine[s]."[114] We agree.

### b. The Violation Notices do not violate procedural due process because the City and Parking Authority inform the Vehicle Owners of their right to a hearing.

We next turn to the fact-specific question of procedure. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably

18

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[115]

To determine the requirements of procedural due process here, we must apply the balancing test the Supreme Court articulated in *Mathews v. Eldridge*.[116] This test requires consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[117]

As for the first *Mathews* factor, the private interest here is slight. The fines at issue are modest: $100–150 at most. And a vehicle owner does not have to pay anything to challenge their citation before the Office of Administrative Review. Accordingly, the only potentially erroneous deprivation must be suffered to invoke the procedures provided in the ordinance is the normal filing fees to appeal an adverse decision to the Pennsylvania courts.[118]

Turning to the second *Mathews* factor, the risk of an erroneous deprivation here is slight. The General Assembly requires the City and Parking Authority to mail a notice of violation by first class mail to the vehicle owner within thirty days of the violation event.[119] "Notice sent by first-class mail [i]s reasonably calculated to provide actual notice of the . . . violation and civil penalties."[120] The violation notices make vehicle owners aware of their right to challenge the citation, instructions for requesting a hearing, and a website for more information on how to challenge the citation.[121] The vehicle owner then has the right to request a hearing, where they can present defenses to challenge the notice of violation.[122] These robust procedures satisfy the fundamental requirements of procedural due process. The Vehicle Owners argue the mailed

violation notices imply vehicle owners are liable for the traffic violation and do not inform vehicle owners of the specific defenses available to them under Pennsylvania law. But "[t]he Supreme Court has never required that pre-hearing notices contain a list of potential defenses or explain available hearing procedures in intricate detail to meet due process standards."[123] The Vehicle Owners further argue the Automated Enforcement statutes require violation notices to read "[t]his notice shall be returned personally, by mail or by an agent duly authorized in writing, within 30 days of issuance. A hearing may be obtained upon the written request of the registered owner."[124] Vehicle Owners allege the actual text of the violation notices do not comport with the statute and therefore violate due process because they read: "Response to this Notice of Violation shall be made personally, by mail or by agent duly authorized in writing, within 30 days of the issue date. You must either, admit liability and pay the fine in full, OR request in writing a hearing to dispute this violation. Failure to return payment for the Notice of Violation OR to request a hearing within 30 days of mailing of the Notice of Violation shall be considered an admission of liability."[125]

Procedural due process does not require a verbatim recitation of statutory language. There is no substantive difference between the language offered by the General Assembly and the language included in the violation notices: the notice still explains the violation and the right to a hearing. And even if there were a substantive difference in the information communicated, our Court of Appeals has held "a violation of state law, without more, is not a violation of the federal right to procedural due process."[126] These allegations are further undercut by the enabling statutes and the ordinances, which explicitly provide the vehicle owner can appeal the decision to Pennsylvania courts if the Office of Administrative Review sustains the violation.[127] The risk of an erroneous deprivation resulting from these procedures is slight.

As to the final *Mathews* factor, the City and Parking Authority have an interest in the efficient resolution of disputes concerning traffic camera violations. The additional procedures the Vehicle Owners ostensibly seek (requiring Violation Notices contain the full text of the Pennsylvania statutes creating the traffic camera violation programs) would burden the City and Parking Authority without changing in any way the robust appeals process already available to vehicle owners.

Our analysis is informed by the Court of Appeals for the Sixth Circuit's analysis in *Herrada v. City of Detroit*.[128] Ms. Herrada appealed Judge Woods's dismissal of her civil rights class action complaint.[129] Ms. Herrada argued the City of Detroit's citations for traffic violations contained false statements exaggerating potential penalties and therefore deprived motorists of procedural due process.[130] The court of appeals held "[a]lthough the citation and overdue notice might have contained false and misleading information regarding the penalties for failure to respond, the citation clearly states that a hearing is available to contest the City's allegation that the vehicle owner committed a parking violation."[131] The court concluded "[t]he City's notices were therefore reasonably calculated to inform vehicle owners of the allegations against them and the procedures available to obtain a hearing to contest the allegations."[132]

Analogously, in *Ke v. Philadelphia Parking Authority*, our Court of Appeals considered allegations the Philadelphia Parking Authority violated Mr. Ke's procedural due process rights by booting his vehicle for overdue parking tickets he never received and tricking him into paying the tickets by telling him it was the only way to retrieve his vehicle.[133] Our Court of Appeals affirmed Judge Diamond's dismissal. It held Mr. Ke "failed to state a due process claim because he received all the notice and process he was due; he received a notice on his windshield with a number to call for information about the boot, and he had the opportunity to contest the fine and underlying tickets

in a post-deprivation hearing, but he chose not to" despite Mr. Ke's "allegations that [Philadelphia Parking Authority] employees misled him and failed to comply with their procedures."[134] Other courts of appeals have reached the same conclusion when reviewing procedural due process challenges to analogous automated traffic control programs.[135]

After considering the guidance above and weighing the *Mathews* factors, we are convinced the Automated Enforcement violation notices and the associated statutory appeals processes provide a constitutionally sufficient method for challenging the civil penalties. The notices provide vehicle owners information about the alleged violation and instructions for how to contest the violation notice. The associated statutory procedures are thorough and adequate. They provide an avenue to fully and fairly contest the civil penalties in a timely manner. "The Constitution requires nothing more."[136] Considering the minimal private interest at stake, the low risk of an erroneous deprivation, and the clear notices and opportunity to be heard, the statutory framework and associated notices fully comport with procedural due process requirements.

### C.    The Vehicle Owners concede they do not allege a civil conspiracy.

The Vehicle Owners also allege the City and Parking Authority conspired to profit from depriving the Vehicle Owners of their constitutional rights. The City and Parking Authority disagree and move to dismiss. The Vehicle Owners did not offer an argument opposing the Motion to dismiss the conspiracy claim.

"To prevail on a conspiracy claim under [section] 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights."[137] "This requires that the state actors took 'concerted action' based on an 'agreement' to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights."[138]

22

The Vehicle Owners have not alleged the City and Parking Authority violated their constitutional rights, so they cannot plausibly allege conspiracy. The Vehicle Owners seemingly concede they cannot plead conspiracy because they did not offer an argument in opposition. We dismiss this claim finding the Vehicle Owner failed to state a claim and effectively abandoned any conspiracy allegations at the Motion to dismiss stage.

### D.    We decline to enter a declaration.

The Vehicle Owners also seek a declaratory judgment—an order declaring "Defendants' conduct, as alleged herein, violates the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution."[139] This claim is moot because the Vehicle Owners did not and cannot allege the City and Parking Authority's conduct violated their constitutional rights.

### III.    Conclusion

Pennsylvania's Automated Enforcement Statutes are not facially unconstitutional, and violation notices issued under the statutes do not violate procedural or substantive due process protections because they are misleading or lack required information. The Vehicle Owners do not state a claim for civil rights violations. They do not contest they cannot plead a claim for civil conspiracy. We decline to enter declaratory relief as we find no constitutional claim. We dismiss the amended Complaint with prejudice as a matter of law as the Vehicle Owners have not shown, after two attempts, they are entitled to relief.

---

[1] ECF 20 ¶ 25.

[2] *Id.* ¶¶ 27, 34.

[3] *Id.* ¶ 27.

[4] *Id.* ¶¶ 48–50.

[5] *Id.* ¶ 30.

[6] *Id.* ¶¶ 40–42.

[7] *Id.* ¶ 94.

[8] *Id.*

[9] 75 Pᴀ. Cᴏɴs. Sᴛᴀᴛ. §§ 3116(j), (k); 3370(k), (l).

[10] ECF 20 ¶ 78.

[11] *Id.* ¶ 142.

[12] *Id.* ¶¶ 84, 101.

[13] *Id.* ¶ 144.

[14] *Id.* ¶ 114.

[15] *Id.* ¶ 115.

[16] *Id.* ¶ 110.

[17] *Id.* ¶ 111.

[18] *Id.* ¶ 112.

[19] *Id.* ¶ 113.

[20] *Id.* ¶ 116.

[21] *Id.* ¶ 117.

[22] *Id.* ¶ 118.

[23] *Id.* ¶ 119.

[24] *Id.* ¶¶ 120–21.

[25] *Id.* ¶ 123.

[26] *Id.* ¶¶ 124–25. Robert Thomas is listed in the caption of the amended Complaint but does not plead a fact about his harm or potential claim despite Defendants highlighting this deficiency in their Motions to dismiss the original Complaint. *Compare* ECF 1 *with* ECF 20.

[27] The Vehicle Owners sue a variety of individuals working with the City or its Parking Authority. The citizens elected Cherelle Parker as the City's Mayor. ECF 20 ¶ 128. Lynette M. Brown-Sow serves as Chairperson to the Parking Authority with board members Patricia M. Furlong, Beth C.

Grossman, Alfred W. Taubenberger, Obra S. Kernodle, IV, and Mark C. Nicastre. *Id.* ¶¶ 129–30. Richard Lazer serves as Executive Director of the Parking Authority. *Id.* ¶ 131. Gabe Roberts, Corinne O'Connor, and Keola Harrington serve as Deputy Executive Directors of the Parking Authority. *Id.* ¶ 132. Anthony Kuczynski serves as the Parking Authority's Director of Enforcement. *Id.* ¶ 133. Casey Wech serves as the Philadelphia Parking Authority's Director of Automated Enforcement. *Id.* ¶ 134.

[28] *Id.* at 30–31. Vehicle Owners sue on behalf of two putative classes: (1) all individuals who received a violation notice for an incident where they *were* the driver, and (2) individuals who received a violation notice for an incident where they *were not* the driver. *Id.* ¶ 165.

[29] The Vehicle Owners did not sue the Commonwealth although their first claim challenges the facial constitutionality of the General Assembly's statutes enacted in 2002 and 2018.

They did not comply with Federal Rule 5.1 in not suing the Commonwealth (or providing it notice) when seeking to invalidate a Commonwealth statue as facially unconstitutional.  The Supreme Court through Rule 5.1 requires the Vehicle Owners to either: 1) name the Commonwealth or a Commonwealth official as a defendant; or 2) serve the Pennsylvania Attorney General. FED. R. CIV. P. 5.1 ("A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if: . . . (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned--or on the state attorney general if a state statute is questioned--either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose."); *cf.* PA. R.C.P. 235 ("In any proceeding in a court subject to these rules in which an Act of Assembly is alleged to be unconstitutional . . . and the Commonwealth is not a party, the party raising the question of constitutionality . . . shall promptly give notice thereof by registered mail to the Attorney General of Pennsylvania together with a copy of the pleading or other portion of the record raising the issue and shall file proof of the giving of the notice.").

For the sake of judicial economy, and because our analysis upholds the constitutionality of the state statutes at issue and thus the Commonwealth has not been deprived of the right to defend her enactment, we proceed in finding no merit in the Vehicle Owner's facial legislative challenge.

[30] ECF 20 ¶¶ 185–228.

[31] ECF 23 (Philadelphia Parking Authority Defendants); ECF 22 (City Defendants).

The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[32] ECF 26.

[33] 75 PA. CONS. STAT. § 3116(b).

[34] *Id.* § 3116(f).

[35] *Id.* § 3116(c).

[36] *Id.* § 3116(h)(3).

[37] *Id.* § 3116(d)(4) (emphasis added).

[38] *Id.* § 3116(m); 42 PA. CONS. STAT. §§ 933, 5571.

[39] 75 PA. CONS. STAT. § 3370(b).

[40] *Id.* § 3370(g)(1).

[41] *Id.* § 3370(c).

[42] *Id.* § 3370(i)(3).

[43] *Id.* § 3370(d)(5).

[44] *Id.* § 3370(n).

[45] PHILA., PA., CODE, 12 § 3000 (red light cameras); PHILA., PA., CODE, 12 § 3400 (speed cameras).

[46] *Compare* 75 PA. CONS. STAT. § 3116, *and* 75 PA. CONS. STAT. § 3370, *with* PHILA., PA., CODE, 12 § 3000, *and* PHILA., PA., CODE, 12 § 3400.

[47] 75 PA. CONS. STAT. §§ 3116(h)(2); 3370(h)(i)(2).

[48] Vehicle Owners also bring claim's under the due process clause of the Pennsylvania state constitution. ECF 20, Count IV. But "[t]he the due process provisions of the United States and Pennsylvania constitutions are generally treated as coextensive." *Kovler v. Bureau of Admin. Adjudication*, 6 A.3d 1060, 1062 n.2 (Pa. Commw. Ct. 2010) (citing *Dep't of Transp. v. Taylor*, 841 A.2d 108, 114 n.6 (2004)). "This Court's due process analysis, therefore, is the same under both federal and state law" unless otherwise indicated. *Id.*

[49] *Guerrero v. Bensalem Racing Ass'n, Inc.*, 25 F. Supp. 3d 573, 590 n.12 (E.D. Pa. 2014) (citing U.S. CONST. amend. XIV).

[50] *Nowakowski v. New York*, 835 F.3d 210, 219 (2d Cir. 2016) (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 630 (1988)).

[51] *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (quoting *Allen v. Illinois*, 478 U.S. 364, 368 (1986)).

[52] *Smith v. Doe*, 538 U.S. 84, 92 (2003) (citing *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)).

[53] *Hudson v. United States*, 522 U.S. 93, 99 (1997) (quoting *United States v. Ward*, 448 U.S. 242, 248 (1980)).

[54] 75 PA. CONS. STAT. § 3370(d)(5); *see also id.* § 3116(d)(4) (same).

[55] *Ward*, 448 U.S. at 248–49; *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956).

[56] *United States v. Jumper*, 74 F.4th 107, 112–13 (3d Cir. 2023) (quoting *Hudson*, 522 U.S. at 99–100), *cert. denied*, 144 S. Ct. 406 (2023).

[57] 316 A.3d 1062 (Pa. Commw. Ct. 2024), *reargument denied* (July 11, 2024), *appeal denied*, No. 243-2024, 2025 WL 599843 (Pa. Feb. 25, 2025). Although we do not defer to this decision because "'the characterization of this proceeding and the relief given as civil or criminal in nature, for purposes of determining the proper applicability of federal constitutional protections . . . raise[s] 'a question of federal law rather than state law[,]'" we still find the analysis educational. *Nowakowski*, 835 F.3d at 219 (quoting *Hicks*, 485 U.S. at 630).

[58] *In re Heinz*, 316 A.3d at 1064.

[59] *Id.*

[60] *Id.*

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 1065.

[69] *Id.* at 1065–74 (citing 372 U.S. 144 (1963)).

[70] *Id.* at 1072–73 (quoting *Worthy v. City of Phenix City , Ala.*, 930 F.3d 1206, 1218 (11th Cir. 2019)).

[71] *Id.* at 1073 (quoting *Worthy*, 930 F.3d at 1219).

[72] *Id.* (quoting *Worthy*, 930 F.3d at 1219).

[73] *Id.*

[74] *Id.* at 1073–74.

[75] 372 U.S. at 168–69.

[76] *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 302 F. App'x 115, 120 (3d Cir. 2008) (quoting *Hudson*, 522 U.S. at 104).

[77] *See, e.g.*, 75 PA. CONS. STAT. § 3370(e) ("(e) Liability.--Driving in excess of the posted speed limit along the designated highway by 11 miles per hour or more is a violation of this section.").

[78] *See, e.g.*, 75 PA. CONS. STAT. § 3362(c).

[79] *In re Heinz*, 316 A.3d at 1073.

[80] *Bevis v. City of New Orleans*, No. 10-4161, 2011 WL 2899120, at *3 n.11 (E.D. La. July 18, 2011) (collecting cases), *aff'd*, 686 F.3d 277 (5th Cir. 2012).

[81] *Kehl v. Allegheny Cnty.*, No. 24-60, 2024 WL 5166776, at *8 (W.D. Pa. Dec. 19, 2024) (quoting *LoPresti v. Johnson*, No. 22-1435, 2023 WL 6890732, at *4 (3d Cir. Oct. 19, 2023)).

[82] *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).

[83] *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014) (quotation and citation omitted).

[84] *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997).

[85] *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003) (citation omitted).

[86] *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–226 (1985)).

[87] *Baghdad v. Att'y Gen. of United States*, 50 F.4th 386, 389–90 (3d Cir. 2022) (citing *Cnty. Ct. of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 157 (1979)).

[88] *Id.* at 390.

[89] *See Mobile, Jackson & Kansas City R.R. v. Turnipseed*, 219 U.S. 35, 43 (1910) (holding a statute which creates a presumption of civil liability does not violate due process "since its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference"); *Agomo v. Fenty*, 916 A.2d 181, 194 (D.C. App. 2007) ("As the trial court noted, presumption of liability is not a novel concept in civil cases.").

[90] *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 28 (1976).

[91] *Burkhart v. Univ. Interscholastic League*, No. 22-1026, 2023 WL 2940026, at *5 (W.D. Tex. Apr. 13, 2023) (citing *Agomo*, 916 A.2d 181 and *Mobile*, 219 U.S. at 43).

[92] *Id.*; *see also Agomo*, 916 A.2d at 193 (statutory presumption of vehicle owner liability did not violate due process); *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) ("Is it rational to fine the owner rather than the driver? Certainly so. A camera can show reliably which cars and trucks go through red lights but is less likely to show who was driving. That would make it easy for owners to point the finger at friends or children—and essentially impossible for the City to prove otherwise. A system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected; these benefits can be achieved only if the owner is held responsible."); *Ware v. Lafayette City-Par. Consol. Gov't*, No. 08-0218, 2009 WL 5876275, at *9 (W.D. La. Jan. 6, 2009) ("In this case, the Ordinances do not create an unreasonable inference of one fact from proof of another. It is entirely rational to presume that a vehicle is being driven by its registered owner or a third person to whom the owner has [entrusted] the vehicle and for whom the owner may be responsible. The Ordinances do not deny a vehicle owner a reasonable opportunity to present evidence to the contrary.").

[93] *Heffner*, 745 F.3d at 79 (quoting *Alexander*, 114 F.3d at 1403).

[94] *Id.* (citation omitted).

[95] *Id.* (citation omitted; quoting *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013)).

[96] *Idris*, 552 F.3d at 566.

[97] The constitutional test under Pennsylvania's Constitution is slightly more stringent, but we reach the same conclusion. The Pennsylvania Commonwealth Court in *In re Heinz* studied a due process challenge to Pennsylvania's automated speed enforcement statute. The Commonwealth Court found the statutes did not violate Mr. Heinz's due process rights, federal and state, because the speed camera statute's "legitimate public interest is to deter speeding on the designated highway"; the associated fines had a deterrent effect on speeding which was a legitimate public safety concern; and "a $100.00 or $150.00 fine with no further penalty or criminal liability, and no impact on an individual's driving or insurance records, is not oppressive." *In re Heinz*, 316 A.3d at 1075–76. We agree.

[98] *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000)).

[99] *Id.* (quoting *Nicholas*, 227 F.3d at 140).

[100] *Id.* (quoting *Nicholas*, 227 F.3d at 140).

[101] *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotation marks omitted).

[102] *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003)) ("As a general rule, our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.") (cleaned up).

[103] *Compare* ECF 1 *with* ECF 20.

[104] *Nicholas*, 227 F.3d at 141 (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600 (3d Cir. 1995). Our Court of Appeals reaffirmed this limitation seven years ago. *Newark*, 901 F.3d at 155 ("[T]he only protected property interests we have thus far deemed fundamental involved ownership of real property.").

[105] *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006); *Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179–80 (3d Cir. 1997); *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 401–04 (3d Cir. 2000).

[106] *Frank L. Rizzo Monument Comm. v. City of Phila.*, No. 20-3245, 2022 WL 125907, at *4 (E.D. Pa. Jan. 13, 2022).

[107] *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

[108] *Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 459 (M.D. Pa. 2020) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

[109] *Mathews v. Eldridge*, 424 U.S. 319, 324 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (cleaned up).

[110] *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir. 2003)) (cleaned up).

[111] *Dunmore*, 505 F. Supp. 3d at 460.

[112] *Odi v. Alexander*, No. 15-4903, 2017 WL 914818, at *9 (E.D. Pa. Mar. 7, 2017) (citing *Nicholas*, 227 F.3d at 139); *Nicholas*, 227 F.3d at 140 (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)) (cleaned up).

[113] *Shouse v. Nat'l Corrective Grp, Inc.*, No. 10-175, 2010 WL 4942222, at *4 (M.D. Pa. Nov. 30, 2010) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)).

[114] *Haagensen v. Pa. State Police*, No. 08-727, 2010 WL 256578, at *19 n.16 (W.D. Pa. Jan. 20, 2010) (citing *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001)), *aff'd*, 490 F. App'x 447 (3d Cir. 2012)).

[115] *Memphis*, 436 U.S. at 13 (quoting *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950)).

[116] 424 U.S. 319.

[117] *Id.* at 335.

[118] The Vehicle Owners argue, despite the availability of the free hearing before the Office of Administrative Review to contest a violation notice, the Automated Enforcement programs violate procedural due process because an appeal to state court requires payment of a filing fee more expensive than the cost of the fine.

None of the Vehicle Owners appealed a decision from the Office of Administrative review so this complaint is not ripe, but even if it were, the argument fails. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."). As a baseline rule, "courts have long recognized that, in the absence of extraordinary circumstances, the imposition of filing fees in a judicial proceeding does not violate the Constitution." *In re Ballentine*, 611 F. App'x 64, 65 (3d Cir. 2015) (citing *Ortwein v. Schwab*, 410 U.S. 656, 659–61 (1973)). The narrow exception to this rule is "when denial of a judicial forum would implicate a fundamental human interest—such as the termination of parental rights or the ability to obtain a divorce." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). This is not such a case.

Our colleagues have also found filing fees more than the money at issue constitutional under far less favorable facts than we face here. In *Dowd v. New Castle County*, Judge Robinson considered plaintiffs' constitutional challenge to a $500 nonrefundable filing fee to appeal a $50 civil penalty. No. 10-82, 2011 WL 1419663, at *15 (D. Del. Apr. 13, 2011). Judge Robinson began by noting, as is true here, there was "no indication that the $500 filing fee worked a hardship on plaintiffs in th[at] case." *Id.* The original $50 penalty was due without any opportunity for a predeprivation proceeding. *Id.* Despite this fact, Judge Robinson still found "the additional costs associated with providing a predeprivation hearing in this context outweigh its utility in reducing the risk of error" and the $500 fee to appeal did not violate procedural due process. *Id.*

Procedural due process does not guarantee a free path to judicial review (and the availability of a free administrative hearing more than meets the standard).

[119] 75 PA. CONS. STAT. §§ 3116(j), (k); 3370(k), (l).

[120] *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 150 (4th Cir. 2014).

[121] ECF 20 and attachments.

[122] 75 PA. CONS. STAT. §§ 3116(f), (m); 3370(g), (n).

[123] *Anderson v. White*, 888 F.2d 985, 992 (3d Cir. 1989).

[124] ECF 20 ¶ 97 (citing 75 PA. CONS. STAT. § 3116).

The Vehicle Owners argue they are denied due process because the outcome of Office of Administrative Review hearings is predetermined. ECF 26 at 20–23. The Vehicle Owners specifically point to Mr. Kelly's experience: he attempted to dispute his speeding violation by showing data from an application on his cell phone and the Office of Administrative Review still found him liable for the violation.

As a starting point, Mr. Kelly did not appeal the Office of Administrative Review's decision and therefore this issue is not ripe. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116. None of the other Vehicle Owners even requested a hearing. For this reason alone this argument fails.

And Mr. Kelly's experience alone is not evidence of a predetermined outcome or systematic sham proceedings. The isolated fact he lost his challenge before the Office of Administrative review is insufficient. The Vehicle Owners rely on Mr. Kelly's presentation of phone data as proof the City and Parking Authority wrongly cited him but the Office of Administrative Review is not obligated to credit every piece of evidence presented over the evidence collected by the traffic enforcement system.

The Vehicle Owners cite to several plainly distinguishable cases for the premise sham proceedings violate procedural due process rights. ECF 26 at 14–15. Each of the cases cited involves egregious conduct or clear procedural irregularities. In *Bakalis v. Golembeski*, the Court of Appeals for the Seventh Circuit found the outcome of a proceeding may have been prejudged where the petitioner had ongoing personal conflicts with certain members of a review board. 35 F.3d 318, 326 (7th Cir. 1994). Mr. Kelly makes no such allegation. In *Hayes v. Reed*, Judge Yohn found procedures for suspending medical licenses for failure to pay certain fees potentially violated procedural due process protections because physicians were not provided with notice or an opportunity to be heard before their licenses were suspended. No. 96-4941, 1997 WL 125742, at *4 (E.D. Pa. Mar. 13, 1997). The City and Parking Authority notified Mr. Kelly of his ability to contest his traffic violation and he did so. In *Baltas v. Rizvani*, Judge Shea found a potential procedural due process violation where plaintiff alleged the outcome of the proceeding had already been entered in a computer before it began and the hearing officer introduced false evidence against the plaintiff and refused to consider his exculpatory evidence. No. 21-436, 2023 WL 6216782, at *2 (D. Conn.

Sept. 25, 2023). Mr. Kelly makes no such allegation. In *Duffy v. Evans*, Judge Furman found a potential procedural due process violation where "a portion of the Commissioner's Worksheet that was completed by the Board during the parole hearing—most notably, the portion that begins 'Parole is denied'—is typewritten and, according to the complaint, the Board did not have a typewriter or computer at the hearing." No. 11-7605, 2012 WL 4327605, at *10 (S.D.N.Y. Sept. 19, 2012). Mr. Kelly makes no such allegation. In *Murphy v. Mass. – Exec. Off. of Trial Court*, Judge Hillman found a potential due process violation where "in the years leading up to his pre-termination hearing, Defendant Abraham had promulgated lies about the Plaintiff, forced him to take prescription medications, and exhibited differential treatment based on a perception that the Plaintiff was mentally ill." 335 F. Supp. 3d 137, 148 (D. Mass. 2018). Mr. Kelly makes no such allegation.

The Vehicle Owners do not plead facts showing the outcome of Office of Administrative Review hearings are predetermined. They could not amend to plead this claim. The City and Parking Authority raised these deficiencies in their Motions to dismiss the Original Complaint: Vehicle Owners amended in response to those Motions to dismiss but did not plead any new facts. Further, none of the Vehicle Owners took advantage of the available appellate process and therefore cannot complain they were denied procedural due process.

[125] ECF 20 ¶ 101.

The Vehicle Owners argue, although Automated Speeding violation notices cite to both section 3362 (the general statute prohibiting speeding) and section 3370 (the Automated Enforcement statute), the violation notices state the vehicle owner is liable under section 3362. ECF 26 at 19. The Vehicle Owners argue this tricks vehicle owners into reading section 3362 instead of section 3370 and not reading about statutory defenses to the violation notice contained in section 3370. *Id.*

As a starting point, even though they do not need to, the violation notices cite to section 3370. But more importantly, the violation notices notify the Vehicle Owners are liable under section 3362 because the General Assembly, in section 3370(i)(3), requires the violation notices to include "***notice that the violation charged is under section 3362***[.]" 75 PA. CONS. STAT. § 3370(i)(3) (emphasis added).

[126] *Coreia v. Schuylkill Cnty. Area Vocational-Tech. Sch. Auth.*, 241 F. App'x 47, 50 n.1 (3d Cir. 2007) (quoting *Kompare v. Stein*, 801 F.2d 883, 888 (7th Cir. 1986)) (cleaned up).

[127] 75 PA. CONS. STAT. §§ 3116(m); 3370(n).

[128] *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001).

[129] *Id.* at 553.

[130] *Id.* at 554.

[131] *Id.* at 557.

[132] *Id.*

33

[133] 831 F. App'x 621, 621–22 (3d Cir. 2020).

[134] *Id.* at 622–23 & n.4 (citing *Hill*, 455 F.3d at 233–34; *Kovler v. Bureau of Admin. Adjudication*, 6 A.3d 1060, 1062–64 (Pa. Commw. Ct. 2010); *Tate v. Dist. of Columbia*, 627 F.3d 904, 908 (D.C. Cir. 2010)).

[135] *Bevis*, 686 F.3d 277 (analogous traffic control system satisfied procedural due process); *Mendenhall v. City of Akron*, 374 F. App'x 598 (6th Cir. 2010) (same).

[136] *Worthy v. City of Phenix City*, 930 F.3d 1206, 1223–24 (11th Cir. 2019) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). Analogously, our Court of Appeals has specifically endorsed "Philadelphia's procedures for adjudicating ***parking*** violations satisfy the due process requirements of both the United States and the Pennsylvania constitutions." *King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (citing *Kovler v. Bureau of Admin. Adjudication*, 6 A.3d 1060, 1062–64 (Pa. Commw. Ct. 2010)) (emphasis added).

[137] *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (quoting *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018)).

[138] *Id.* (citing *Jutrowski*, 904 F.3d at 295).

[139] ECF 20 at 30.